McDonald, j.
|2We note at the outset that this is a difficult case. This case is the subject of an earlier appeal, T.D. v. F.X.A., 2012 CA 1590 (LaApp. 1 Cir. 5/22/2014), which has not been handed down.[1] In that case, T.D. (the mother) appealed a February 13, 2012 district court judgment that ordered that the parties’ daughter, V.D., (now aged 17) attend an out-of-state boarding school, at the request of F.X.A. (the father), and against the wishes of T.D., and also ordered T.D. to encourage V.D. to go to the school and advised that if T.D. failed to do so, the district court would consider a change of custody to F.X.A.[2] Further, the judgment ordered F.X.A. to visit the school within three weeks to ensure that he was satisfied with the facility and that if T.D. wished to visit the school, F.X.A. would pay for her plane ticket, as he stipulated in open court. That ruling followed F.X.A.’s rule to modify custody, seeking to change the custody arrangement that had been in place since a December 6, 2010 consent judgment, with the parties having joint custody and T.D. being the domiciliary parent.
T.D. tried to file a suspensive appeal from that judgment, but the district court *190 denied the suspensive appeal. T.D. then filed a supervisory writ and a request, for stay with this court, asserting that the February 13, 2012 judgment was not related to custody (which would preclude a suspensive appeal, pursuant to La. C.C.P. art. 8945) but was instead a judgment concerning school placement. This court denied the writ and the motion for stay on March 23, 2012, stating: “Accordingly, the judgment ‘relates to custody[5] as contemplated by La. C.C.P. art. 3945, and in accordance with its provisions, ‘an appeal shall not suspend execution of the judgment. T.D. v. F.X.A., 2012 CW 0458 (La.App. 1 Cir. 3/23/12). T.D. then filed a devolutive appeal from the judgment on March 19, 2012.
| a While that appeal was still pending, on May 23, 2012, F.X.A. filed a rule to change custody, and for contempt, attorney fees, and costs. He asserted that T.D. failed to encourage V.D. to attend the school and instituted and participated in an internet campaign to prevent V.D. from attending the school. In particular, he maintained that T.D. had communicated with and solicited members of a Facebook group known as “I Survived Diamond Ranch Academy," whose members made derogatory comments regarding the school and the district court, including attaching an internet link to the www.amackerforjudge. com website, as well as a copy of an email from the judge’s administrative assistant to the judge; that T.D. communicated with and solicited members to an internet website, www.troubledprograms.com, in an effort to obtain signatures for a petition titled “Save [V.D.] From Diamond Ranch Academy55; that T.D. exhibited hostile and derogatory behavior while visiting Diamond Ranch Academy with V.D., which, as a result of her behavior, along with the internet posts, caused the Admissions Director, Daniel Borehardt, to advise by correspondence dated May 17, 2012, that the school had “great apprehension at the prospect of enrolling [V.D.] at Diamond Ranch Academy"; and further, that T.D. refused to sign the school’s admissions agreement, which included a liability waiver form, despite F.X.A.’s numerous requests. F.X.A. asked that as a result of T.D.’s failure to encourage V.D. to attend the school and her failure to sign the admissions agreement, both of which, he asserted, the district court had ordered her to do, he be awarded sole custody of V.D., or in the alternative, that the district court maintain joint custody and designate him as the domiciliary parent. He further asked that T.D. be held in contempt of court for her repeated violations of the January 25, 2012 judgment, be fined and incarcerated, and be ordered to pay attorney fees and costs.
On October 8, 2012, T.D. filed a peremptory exception raising the objection of no cause of action, asserting that F.X.A. sought to change the status of custody 14from joint to sole custody for himself, or at least change custody to have himself designated as the domiciliary parent, but that the district court’s February 13, 2012 judgment had not changed the status of custody, and thus, F.X.A. had to meet the heavy burden of the Bergeron[3] standard in order to change custody. She asserted that F.X.A. had failed to state a cause of action upon which he could proceed to change custody as he had not asserted any allegation that would rise to the Bergeron standard; thus, his rule to change custody, and for contempt, attorney fees, and costs should be dismissed.
The district court heard the matter on October 10, 2012. After the hearing, the district court denied T.D.’s peremptory *191 exception raising the objection of no cause of action; found T.D. in contempt of court on four counts and sentenced her to 80 days in jail for each count, to run concurrently, with all but seven of the days suspended; remanded her immediately to the parish jail, to remain for seven days without benefit of release, and ordered her to serve the balance of the 30 days under unsupervised probation; and ordered her to pay a fine of $100 for each count, for a total of $400; and set the matter for a compliance hearing on November 7, 2012. The district court awarded sole custody of V.D. to F.X.A. and prohibited T.D. and her family members from having any contact with V.D. The district court ordered T.D. to undergo a full mental health evaluation with a court-approved provider prior to the district court considering resuming contact between T.D. and V.D. Additionally, the district court appointed Dr. Alicia Pelleg-rin to perform a mental health evaluation of T.D. at T.D.’s cost, with the evaluation to include a review of the testimony and evidence offered at all pertinent hearings in the matter, together with a conference with counsel for both parties, to address all of the mental health issues of T.D. It was further ordered that the prior district [fiCourt judgment regarding V.D. attending Diamond Ranch Academy be vacated.[4] F.X.A. was permitted to enroll V.D. into any school of his choice, and to utilize the court’s social worker. Also, the child support paid by F.X.A. to T.D. was terminated. The judgment was rendered at the conclusion of the hearing and it was signed on October 30, 2012.
T.D. is appealing that judgment. She makes the following assignments of error.
1. The trial court abused its discretion and committed manifest error by denying Appellant’s Exception of No Cause of Action, where Appellant had asserted that the heavy Berger-on standard applied to any decision to modify custody because of the considered decree that had issued from the January 25, 2010 trial where joint custody was continued and domiciliary status of Mother was continued. No evidence was presented in this October trial, or recited by the trial court, that would have established by the requisite clear and convincing standard that the change in custody was warranted under the Bergeron standard for considered decrees.
2. The trial court abused its discretion and committed manifest error by finding Appellant in contempt of court on four counts and sentencing her to seven (7) days of actual jail time (30 days on each count to run concurrently, with all but 7 suspended), plus $100 fine on each count ($400) due to Appellant purportedly failing to encourage the child to attend the Diamond Ranch Academy (the school in Utah that the Trial Court ordered the child to attend in its January 25, 2012 judgment, which was the subject of a previous appeal docketed as 2012-CA-1590) where the Court concluded that:
(A) Appellant had instigated and directed an online group that opposes *192 the Diamond Ranch [Academy] to post derogatory comments about the school, the Court, and the Father;
(B) Appellant had solicited signatures on a petition called Save [V.D.] From Diamond Ranch Academy to prevent the child from attending the Utah boarding school;
ls(C) Appellant exhibited “hostile and derogatory behavior while visiting school with the minor child”; and
(D) Appellant’s failure to sign the admissions agreement that includes a liability waiver form for Diamond Ranch [Academy] constituted additional evidence of her failure to encourage the child to attend the school.
3. The trial court abused its discretion and committed manifest error by awarding sole custody to the child’s father and not allowing any visitation or contact between the child and her mother or her mother’s family from the moment of the ruling until further orders from the trial court.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, T.D. maintains that the district court abused its discretion and committed manifest error by denying her exception of no cause of action, where she had asserted that the Bergeron standard applied to any decision to modify custody because of the considered decree that had issued from the January 25, 2012 trial where joint custody and her domiciliary status were continued. T.D. asserts that no evidence was presented in the October 10, 2012 trial, or recited by the district court, that would have established by the requisite clear and convincing standard that the change in custody was warranted under the Bergeron standard for considered decrees.
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131. However, in actions to change custody decisions rendered in considered decrees, an additional jurisprudential requirement is imposed. Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, 52, writ denied, 95-1488 (La.9/22/95), 660 So.2d 478. A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Hensgens, 653 So.2d at 52. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is “so deleterious to the child as to justify a 17modifícation of the custody decree,” or of proving “by clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.” Evans v. Lungrin, 708 So.2d 731, 738 (La.1998); Bergeron, 492 So.2d at 1200.
Every child custody case must be considered within its peculiar set of facts. A trial court’s determination of custody is entitled to great weight and will be overturned on appeal only when there is a clear abuse of discretion. Voelkel v. Voelkel, 97-2546 (La.App. 1 Cir. 5/15/98), 712 So.2d 633, 635; Scott v. Scott, 95-0816 (La.App. 1 Cir. 12/15/95), 665 So.2d 760, 763, writ denied, 96-0181 (La.2/2/96), 666 So.2d 1106.
T.D. asserts that the decree that issued from the January 25, 2012 trial, wherein joint custody and T.D.’s domiciliary status were continued, was a considered decree. After that hearing, the district court ruled that F.X.A. met the burden of rebutting the presumption that all major decisions *193 made by the domiciliary parent are in the best interest of the child. La. R.S. 9:335B(3) provides that all major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. After review, the district court found that F.X.A. proved that it was not in the best interest of V.D. to continue at the alternative school she had been attending, and that it was in her best interest to attend the structured, therapeutic boarding school in Utah, Diamond Valley Ranch, which F.X.A. wanted her to attend.
We must determine whether the January 25, 2012 trial was one in which the district court received evidence of parental fitness to exercise care, custody, and control of children. It was F.X.A.’s June 3, 2011 filing of a rule to modify custody that led to the January 25, 2012 hearing. In his rule, F.X.A. asserted that a change in circumstances had occurred since the previous judgment sufficient to warrant a modification in the current custodial arrangement. F.X.A. asserted that V.D. had |Rbeen expelled from school for drug-related issues and was attending an alternative school, from which she had been suspended twice; that she had problems prior to the school expulsion that resulted in intervention by the Juvenile Court; that there was a lack of proper supervision and discipline by T.D. over V.D.; that T.D. continued to engage in a pattern of parental alienation and continued to refuse to pay her court-ordered portion of the mental health professional’s services to a reconciliation therapist appointed by the court to help F.X.A. and V.D. address this issue; and that V.D. had serious emotional issues and needed consistency, routine, and structure, which could not be provided by T.D.
At the hearing on January 25, 2012, the following took place at the start of trial:
THE COURT:
Counsel, let’s state what is before the court today, please.
[F.X.A.’S COUNSEL]
Your Honor, [F.X.A.] filed a motion to modify custody, with the main issue being whether or not the child [V.D.] attends a therapeutic boarding school or stays at school in Tangipahoa.
THE COURT:
Is that right, [T.D.’s counsel]? That’s everything before the court?
[T.D.’S COUNSEL]
Yes; that’s correct.
At this hearing, the court heard testimony from six witnesses: (1) Rhea Marrs, the principal at Tangipahoa Alternative School, which V.D. was attending at that time; (2) Darlene Palliser, the assistant principal at Mandeville Junior High School, which V.D. had previously attended; (3) Teri Groves, a licensed clinical social worker who had been appointed by the court as a reconciliation therapist in the case; (4) Brian Osborn, a licensed clinical social worker who began working with V.D. in 2008; (5) F.X.A.; and (6) T.D.
|flV.D.’s medical records from Mercy Family Center, where she was treated by Dr. William Colomb, Jr., a psychiatrist, were entered into evidence, along with V.D.’s student demographic information from Tangipahoa Alternative Programs and an information brochure and DVD from Diamond Ranch Academy.
After a thorough review of the record, we conclude that at the January 25, 2012 hearing, the district court received evidence of parental fitness to exercise care, custody, and control of V.D. In particular, F.X.A. sought to prove that T.D. was not exercising sufficient and appropriate supervision and control over V.D., such that V.D. should be removed from the alternative school that she was attending and sent *194 to an out-of-state boarding school against the wishes of T.D.
The district court noted, during the hearing, that the hearing was about school choice, rather than custody;[5] however, we find that the district court’s decision to send V.D. to boarding school in Utah against T.D.’s wishes essentially stripped V.D. of her domiciliary parent status, which was a change of custody. Thus, we find that the February 13, 2012 judgment was a considered decree of custody, which necessitated that F.X.A. meet the Berger-on standard at the October 10, 2012 hearing in order to be granted a change in custody.
ASSIGNMENT OF ERROR NO. 2
In this assignment of error, T.D. asserts that the district court abused its discretion and committed manifest error by finding her in contempt of court on four counts and sentencing her to seven (7) days of actual jail time (30 days on each count to run concurrently, with all but 7 suspended), plus a $100 fine on each count ($400 total) due to T.D. purportedly failing to encourage the child to attend linthe Diamond Ranch Academy, where the district court concluded that T.D. had instigated and directed an online group that opposes the Diamond Ranch Academy to post derogatory comments about the school, the trial court, and F.X.A.; T.D. had solicited signatures on a petition called “Save [V.D.] From Diamond Ranch Academy” to prevent the child from attending the Utah boarding school; T.D. exhibited hostile and derogatory behavior while visiting the school with the minor child; and T.D.’s failure to sign the admissions agreement that included a liability waiver form for Diamond Ranch Academy, which constituted additional evidence of her failure to encourage the child to attend the school.
The Louisiana Code of Civil Procedure defines contempt of court as “any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” La. C.C.P. art. 221. A contempt of court proceeding is either criminal or civil, which is determined by what the court primarily seeks to accomplish by imposing sentence. In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order. Billiot v. Billiot, 2001-1298 (La.1/25/02), 805 So.2d 1170,1173.
Criminal contempt is a crime, and the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the contempt charge. On appellate review of criminal contempt, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the contempt charge was proved beyond a reasonable doubt. Id. at 1174.
*195 _J_yWillful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. The purpose of charging and convicting a defendant for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. Therefore, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court. Id.
As T.D. was found guilty of criminal contempt, this court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the contempt charge was proved beyond a reasonable doubt.
A review of the record shows that T.D. testified that she did encourage V.D. to go to the school. Essentially, T.D. testified that she did not want V.D. to go to the school, but she denied discouraging V.D. T.D. further stated that she visited the school with V.D., went sightseeing in the area with her, and basically told her that it was a done deal. She said that she would visit her during the year and they would go shopping in Salt Lake City. T.D.’s longtime family friend, Allison Cooper, testified that she and T.D. had dinner together with V.D. before she was scheduled to leave for school and that both of them encouraged V.D. to go to the school and make the best of it.
T.D. clearly did not agree with the district court’s decision and took steps to have it overturned, i.e., applying for a writ and an appeal from the district court judgment. However, the court could not force T.D. to agree with its decision or to give up her right to legally challenge that decision. While T.D. did contact Nancy Tur-byfill,[6] and Ms. Turbyfill then began an internet campaign to oppose V.D. going to the school, Ms. Turbyfill appeared to act alone in that regard, according to l^the testimony of both T.D. and Ms, Turbyfill. T.D. did not post the derogatory comments about the school, the district court, or F.X.A. While the district court may not have found T.D.’s testimony that she personally did not do those things credible, there was no evidence at the hearing that proved otherwise. T.D. can not be held in criminal contempt of court for actions that were committed by other people, unless there is evidence that she solicited others to participate in the contemptuous conduct. There is no such evidence in this record. Ms. Turbyfill testified (by deposition) that she acted on her own volition and without T.D.’s knowledge or consent.
Further, we note again that the motion for contempt was filed by F.X.A. on May 23, 2012. Any actions taken by T.D. after that date could not serve as the basis for a finding of criminal contempt by T.D., as T.D. was given no notice of a hearing for contempt for any actions taken after May 28, 2012. The district court, in oral reasons for judgment, noted that after the filing of the motion for contempt, T.D. arranged for a radio interview and brought V.D. to the interview, at which other parties made vile commentary about the school, the child’s father, the proceedings in Louisiana, and the court. When F.X.A.’s attorney asked T.D. about this incident, T.D.’s attorney objected. The district court judge sustained the objection in part, stating that the actions could not be used to prove the contempt allegations, but she could consider them in connection *196 with the change of custody issue. However, the court’s judgment clearly found these actions to be in violation of her previous order and one of the four contempt actions.
After a thorough review, we find the evidence was not sufficient for a rational trier of fact to conclude that every element of the charge of criminal contempt for instigating and directing an online group that opposed the Diamond Ranch Academy to post derogatory comments about the school, the district court, and F.X.A., and the charge of criminal contempt for soliciting signatures on a | ^petition called “Save [V.D.] From Diamond Ranch Academy” were proved beyond a reasonable doubt. Thus, both of these counts of criminal contempt are reversed.
As to the criminal contempt count for T.D. exhibiting hostile and derogatory behavior while visiting the school with V.D., there was no evidence in the record of this behavior. While a letter to F.X.A. from Diamond Ranch Academy referencing T.D.’s behavior while visiting the school with V.D. was mentioned at the trial, this letter was not entered into evidence. According to T.D.’s testimony at trial, she called ahead to schedule appointments with school personnel and met with four staffers and several students while she and V.D. were visiting the school. T.D. testified that she and V.D. were well dressed and had made the decision to be on their best behavior while visiting the school.
Thus, as there was not sufficient evidence for a rational trier of fact to conclude that every element of this criminal charge of contempt was proved beyond a reasonable doubt, this finding of criminal contempt is reversed.
The last count of criminal contempt found by the district court was based upon T.D.’s failure to sign the admissions agreement that included a liability waiver form for Diamond Ranch Academy, which the district court determined constituted additional evidence of her failure to encourage V.D. to attend Diamond Ranch Academy.
We note that the judgment did not require T.D. to sign the liability waiver form. T.D. testified at trial that she refused to sign the admissions agreement because if her daughter was injured in a car accident and the other person did not have insurance, or if she fell off a horse, or if she fell off a cliff, there would be no recourse. T.D. testified that she probably would have signed the contract if she could have done so without also signing the release of liability, although she questioned other aspects of the contract, such as strip searches allowed at any time and the use of restraints. We find that T.D.’s failure to sign the admissions 114agreement, due to her concerns about liability, was not “further evidence” of her failure to encourage V.D. to attend the school, but rather, was based upon parental concern. We find the evidence was not sufficient for a rational trier of fact to conclude that every element of this criminal charge of contempt was proved beyond a reasonable doubt. Thus, this finding of criminal contempt is reversed.
ASSIGNMENT OF ERROR NO. 3
In this assignment of error, T.D. asserts that the district court abused its discretion and committed manifest error by awarding sole custody to F.X.A. and not allowing any visitation or contact between V.D. and T.D. or T.D.’s family from the moment of the ruling until further orders from the trial court. T.D. asserts that this ruling was harsh and not in V.D.’s best interest.
As we have found that the district court made a considered decree of permanent custody in the February 13, 2012 judg *197 ment, F.X.A. bore a heavy burden of proving that the continuation of the present custody was so deleterious to V.D. as to justify a modification of the custody decree or of proving by clear and convincing evidence that the harm likely to be caused by the change of environment was substantially outweighed by its advantages to V.D. See Bergeron, 492 So.2d at 1200.
T.D. and F.X.A. had a difficult relationship as parents, and F.X.A. was not a part of V.D.’s life for at least the first five years of her life. V.D. had lived with T.D. for her entire life. The most time V.D. ever spent with F.X.A. was weekend visits. V.D. had attended some reconciliation therapy with F.X.A. in 1996, but the therapy was ultimately discontinued. F.X.A. contended that T.D. continually undermined his relationship with V.D. It also appears from the record that F.X.A. discontinued the reconciliation therapy and contended that it did not fit into his work schedule. F.X.A. did not attend any of the disciplinary school conferences at Poncha-toula High School or the alternative school, nor did he attend the juvenile |1ficourt hearings or group meetings pertaining to drug use, and he met with V.D.’s therapist, Brian Osborn, only once. He testified that V.D. did not want to see him.
While F.X.A. contended at trial that T.D. did not adequately supervise or discipline V.D., he had not seen V.D. for almost two years at the time of the October transfer of physical custody. The extent of their estrangement was so great that F.X.A. did not tell V.D. when he and his wife had a baby (V.D.’s half-sister), and he testified that V.D. did not know about her half-sister’s existence until the child was a year old.
T.D. contended at trial that V.D.’s behavior had improved and that she was doing better in school.
We find that F.X.A. did not meet the heavy burden of proving that the continuation of domiciliary custody with T.D. was so deleterious to V.D. as to justify a modification of the custody decree or of proving by clear and convincing evidence that the harm likely to be caused by the change of environment was substantially outweighed by its advantages to V.D.
We find that the record shows that the district court’s decision to immediately transfer custody of V.D. to F.X.A., the father from whom she was estranged, and immediately prohibit any contact between V.D. and T.D. or T.D.’s family, without letting her mother even tell her goodbye, was an abuse of discretion that was not in the best interest of V.D. Thus, we reverse this ruling by the district court.
For the foregoing reasons, that portion of the district court’s October 30, 2012 judgment finding T.D. in contempt of court on four counts is reversed, and that portion of the judgment awarding sole custody to F.X.A. and not allowing any visitation or contact between V.D. and T.D. or T.D.’s family until further orders from the district court is reversed. Costs of this appeal are assessed against F.X.A.
REVERSED.
PETTIGREW, J. concurs.
McCLENDON, J. concurs and agrees with the result in the case.

. Pursuant to the Uniform Rules-Courts of Appeal, Rules 5 — 1(b) and 5-2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

. The parties had joint custody with T.D. as the domiciliary parent.

. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986).

. We note that the jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal. La. C.C.P. art. 2088. The judgment of the trial court ordering V.D. to attend Diamond Ranch Academy was the focus of the earlier appeal, and the trial court had no jurisdiction to vacate it at this point.

. We note that the actions of the district court (as well as the actions of this court) created a conundrum for T.D. The district court refused to grant T.D. a suspensive appeal of the February 13, 2012 judgment, because the judgment related to custody and La. C.C.P. art. 3943 does not allow for a suspensive appeal in custody cases. T.D. applied for a writ to this court (2012 CW 0458), and it was denied for the same reason. Now, the district court, in written reasons for the October 30, 2012 judgment, maintains that the February 13, 2012 judgment did not relate to custody.

. The trial deposition transcript spells her name "Turbyfill.” However, the transcript of the judge’s oral reasons spells it "Tuberfield.” We utilize the spelling found in the deposition.