NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

STACEY L. CREWSE, *Petitioner/Appellee,*

*v.*

LEGRAND CREWSE, *Respondent/Appellant.*

No. 1 CA-CV 25-0721 FC

FILED 06-15-2026

Appeal from the Superior Court in Maricopa County
No. FC2013-007504
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Tiffany & Bosco, PA, Phoenix
By Amy D. Sells
*Counsel for Petitioner/Appellee*

Reardon House Colton, PLC, Scottsdale
By Kristi A. Reardon
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1        Legrand Crewse ("Father") appeals the superior court's order granting Stacey Crewse ("Mother") sole legal decision-making authority for the parties' minor child and granting Father parenting time "at the child's discretion." For the following reasons, we affirm the court's legal decision-making order but vacate the court's parenting-time order and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the evidence in the light most favorable to upholding the superior court's decision. *Baker v. Meyer*, 237 Ariz. 112, 113, ¶ 2 (App. 2015).

¶3        Mother and Father married in 2002. They had three children together, one of whom ("Child") was still a minor at the time of the relevant proceedings. The court dissolved the marriage by consent decree in 2014. Under the decree, Mother and Father had joint legal decision-making authority for the children and a rotating parenting schedule that allowed Father weekly parenting time.

¶4        Shortly after the divorce, Father moved to Las Vegas and spent several years living outside Arizona before moving back in early 2022. Until 2021, Father maintained contact with Mother and the children and would at times fly to Arizona to visit them or have Mother bring the children to him. Though the parties did not follow the decree's parenting plan, they cooperated in arranging Father's parenting time.

¶5        By May 2021, however, the relationship between Mother and Father soured and the children began refusing to see Father. In January 2022, Father petitioned to modify parenting time. Father alleged Mother was denying him parenting time and disregarding the parenting plan, and he requested either equal parenting time or to be designated the primary residential parent. Soon after, Mother moved for temporary orders, alleging the children were in imminent danger due to Father's conduct.

Mother alleged that Father picked up Child from school before the school day was over and drove at unsafe speeds, drove with the children while under the influence of drugs, and verbally and emotionally abused Mother. The court entered emergency temporary orders suspending Father's parenting time and granting Mother sole legal decision-making authority.

¶6 Father denied Mother's claims and alleged Mother had fabricated them to sabotage his relationship with the children. After a hearing, the court amended the temporary orders, making Mother the primary residential parent but restoring some of Father's parenting time. The court also appointed multiple therapeutic interventionists, but none managed to restore the relationship between Father and Mother, or Father and the children. After 2022, Father had no contact with Child outside of the therapeutic intervention ("TI") process. The TI process itself was inconsistent, as after the first therapeutic interventionist was removed from the case in January 2023, there were difficulties finding a replacement and the parties ultimately engaged a therapeutic interventionist for only four months in 2023. At her final TI meeting, Child expressed that she had a difficult relationship with Father and did not feel safe with him and provided examples of unsafe behavior that Father had engaged in with her present. But Child did not indicate that she feared Father and a court-appointed behavioral health professional who previously met with her did not believe that she was afraid of Father.

¶7 In April 2025, the superior court held a five-day trial. The court found that Father had engaged in no domestic violence against Mother since the dissolution decree was entered, and that he rebutted any presumption arising from his past substance abuse. However, the court also found there was "significant conflict between the parties" and a "strained relationship between Father and [Child]." Regarding Child, the court found "the child is 13 years old and appears to be very bright and mature for her age" and gave "some weight to the evidence submitted regarding the child's wishes" concerning legal decision-making authority and parenting time.

¶8 The court granted sole legal decision-making authority to Mother. It established no structured parenting-time schedule but allowed Father parenting time only "at [Child's] discretion."

¶9 Father moved to alter or amend the legal decision-making and parenting-time order. As relevant to this appeal, he requested additional findings to support the grant of sole legal decision-making authority to Mother and to indicate how Mother's behavior affected Child's

parenting-time preferences and relationship with Father. He also requested the addition of a communication provision so Father would have a way to contact Child, a set parenting-time plan within which Child could exercise her discretion, and a requirement that Child attend therapy. The superior court denied Father's motion.

¶10 Father timely appealed the legal decision-making and parenting-time order as well as the denial of his motion to alter or amend. We have jurisdiction under the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

### I. Legal Decision-Making Authority

¶11 Father contends the superior court erred in awarding Mother sole legal decision-making authority without adequate explanation. We review legal decision-making orders for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013).

¶12 The superior court must determine legal decision-making authority in accordance with the best interests of the child and must consider all relevant enumerated factors found in A.R.S. §§ 25-403(A) and -403.01(B). Section 25-403(B) further requires that in a contested case such as this, the court "shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." Cursory findings that fail to explain how the court weighed the evidence are insufficient; the findings must be "sufficiently specific" to allow an appellate court to accurately assess the ruling's validity by reviewing, without speculation, "*how* the trial court actually arrived at its conclusion." *Miller v. Bd. of Supervisors of Pinal Cnty.*, 175 Ariz. 296, 299 (1993); *see also Reid v. Reid*, 222 Ariz. 204, 209, ¶ 18 (App. 2009).

¶13 The superior court's findings were sufficient to support its award of sole legal decision-making authority to Mother. The court's order includes extensive factual findings and addresses every factor listed in A.R.S. § 25-403(A). It is true that, as Father alleges, not every factor supports granting sole decision-making authority to Mother. However, many of the court's factual findings support that decision, and our role is not to second-guess how the superior court weighs the evidence. *See Smith v. Smith*, 253 Ariz. 43, 48, ¶ 22 (App. 2022) ("[U]nder the abuse of discretion standard, this court must uphold a superior court's order when sufficient evidence supports the underlying findings."). The superior court's findings and explanations were also detailed enough for us to determine, without

4

resorting to speculation, which factors the superior court considered to carry more weight and why the superior court concluded that it was in Child's best interests to award sole legal decision-making authority to Mother. As such, the superior court did not err in making that award.

## II. Parenting Time

**¶14** Father next argues the superior court abused its discretion in ordering that Father's parenting time be at Child's discretion. We review an award of parenting time for an abuse of discretion. *Gish v. Greyson*, 253 Ariz. 437, 444, ¶ 31 (App. 2022). The superior court abuses its discretion when it commits legal error. *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019).

### A. Waiver

**¶15** We address waiver as a preliminary matter. In his motion to alter or amend the superior court's parenting-time order, Father requested that the court amend the order to include a schedule of specific dates and times during which Child could exercise her discretionary parenting time. He did not, however, challenge the adequacy of the findings underlying the court's ruling that parenting time should be at Child's discretion. Absent extraordinary circumstances, arguments not raised in the trial court are waived and cannot be raised on appeal. *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994). We decline to apply waiver, however, because the best interests of a child are at stake. *See Nold*, 232 Ariz. at 273, ¶ 10.

### B. Arizona Statutory Requirements for Parenting Time

**¶16** The Arizona Legislature has adopted statutory requirements for the superior court to follow in resolving parenting-time disputes. Section 25-403(A) mandates that the superior court "shall determine . . . parenting time . . . in accordance with the best interests of the child." The court must adopt a parenting plan consistent with those best interests. A.R.S. § 25-403.02(B). This parenting plan must include, among other things, "[a] practical schedule of parenting time for the child, including holidays and school vacations." A.R.S. § 25-403.02(C)(3).

**¶17** The statutory scheme favors meaningful parenting time for both parents unless the circumstances compel otherwise. It is Arizona public policy that absent evidence to the contrary, it is in a child's best interests to "have substantial, frequent, meaningful and continuing parenting time with both parents." A.R.S. § 25-103(B)(1). The court's parenting plan must maximize each parent's parenting time, A.R.S. § 25-

403.02(B), and equal or near-equal parenting time is presumed to be in a child's best interests, *Woyton*, 247 Ariz. at 531, ¶ 6. Further, a parent who is awarded no legal decision-making authority is entitled to "reasonable parenting time to ensure that the minor child has substantial, frequent, meaningful and continuing contact with the parent unless the court finds, after a hearing, that parenting time would endanger the child's physical, mental, moral or emotional health." A.R.S. § 25-403.01(D).

¶18　　　Here, the superior court departed from the presumptive allocation by making Father's parenting time dependent solely on Child's discretion. This order was insufficiently supported by the court's factual findings and the record.

### C.　The Superior Court's Factual Findings

¶19　　　First, the superior court's factual findings were insufficient to rebut the presumption that equal or near-equal parenting time would be in Child's best interests. *See Woyton*, 247 Ariz. at 531, ¶ 6; A.R.S. § 25-103(B)(1). We must accept the superior court's findings if there is adequate evidence to support them. *Cavazos v. Holmes Tuttle Broadway Ford, Inc.*, 104 Ariz. 540, 543 (1969). As with legal decision-making findings, the superior court's parenting-time findings must be sufficient for this court to assess the basis for the superior court's conclusions. *See Miller*, 175 Ariz. at 299; *see also Reid*, 222 Ariz. at 209, ¶ 18.

¶20　　　The court's parenting-time order placing Father's parenting time at Child's discretion did not establish equal or near-equal parenting time. Child was thirteen years-old when the order issued. The superior court found Child was living with Mother and an adult sibling who was "100% aligned with Mother" and who had "no contact with Father." Child had not seen Father for years outside of a TI process that Mother and the adult sibling both disliked, and the court described Child's relationship with Father as "significantly damaged." The combination of Child's age, Child's damaged relationship with Father, and the influences surrounding Child leaves in question whether Child will exercise her discretion frequently enough for Father to have equal or near-equal parenting time. Because of this, the court needed to make sufficient factual findings to explain why it concluded that Father's parenting time being at Child's discretion was in Child's best interests. *See Woyton*, 247 Ariz. at 531, ¶ 6; *Miller*, 175 Ariz. at 299. It failed to do so.

¶21　　　In examining the A.R.S. § 25-403(A) factors, the court found that some weight should be given to evidence of Child's wishes. However,

there is little record evidence about what these wishes are. Notably, the court itself acknowledged in the order that it had "no real, updated information on the child's true feelings about Father or spending time with him." The court referred to a years-old court-ordered evaluator's report where Child stated she "preferred not to see Father," but the court also noted that this preference appeared to a court-appointed behavioral health professional to be due to Father's legal actions rather than any fear of him. The court also specifically found that "it may not be in [Child]'s best interests to cut Father out of her life." Evidence of Child's wishes was especially important to support the parenting-time ruling given that Child was given discretion over Father's parenting time and so her wishes will dictate how she exercises that discretion.

¶22        The superior court also speculated that "it's possible [Child] is sick of all of it. Sick of the drama, sick of the fighting, and sick of being forced to choose a side." But speculation could not provide a factual basis to support the parenting-time order. Further, if it is true that Child is "sick of" being forced to choose a side, the order would work directly against Child's best interests, as Child would be forced to constantly "choose a side" in determining her parents' parenting-time rights.

¶23        The court also made no findings that granting Father parenting time would endanger Child under A.R.S. § 25-403.01(D). The superior court did find that Father has demonstrated temper issues and has thrown objects in anger. However, it also found that Father engaged in no acts of domestic violence post-decree, that any drug or alcohol use by Father did not impact his ability to parent, and that Child did not appear to fear Father. And the court made no findings that spending time with Father would endanger Child's physical, mental, moral, or emotional health as required for a deviation from reasonable parenting time under A.R.S. § 25-403.01(D). The court instead suggested that it "may not be in [Child's] best interests to cut Father out of her life."

¶24        The superior court's factual findings here do not establish how the presumption in favor of equal or near-equal parenting time for Father was rebutted. The court also provided insufficient justification to explain why placing Father's parenting time at Child's discretion was in Child's best interests. For these reasons, the court abused its discretion when it placed Father's parenting-time schedule solely at Child's discretion.

III.     Attorneys' Fees and Costs on Appeal

**¶25**          Both parties request attorneys' fees incurred in this appeal under A.R.S. § 25-324.  Having considered the relevant factors, in our discretion, we deny both requests.  As the prevailing party, Father is entitled to his taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

**¶26**          We vacate the portion of the superior court's order placing Father's parenting time at Child's discretion and remand for the superior court to issue a parenting-time order consistent with the statutory requirements and appropriately supported by factual findings.  We otherwise affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:              JR

8