212 P.3d 919

**Paollo JORDAN, Petitioner,**

v.

**The Honorable John REA, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge, Gerald Romine, Real Party in Interest.**

**No. 1 CA–SA 09–0007.**

Court of Appeals of Arizona, Division 1, Department A.

May 28, 2009.

---

Mueller & Drury, P.C., By James P. Mueller, Scottsdale, Attorney for Petitioner.

Rowley Chapman Barney & Buntrock, Ltd, By Timothy W. Durkin, Mesa, Attorneys for Respondent/Real Party in Interest.

Paul G. Ulrich, P.C. By Paul G. Ulrich, Phoenix, Additional Counsel for Respondent/Real Party in Interest.

## OPINION

BARKER, Judge.

¶1 In this special action we address three issues of first impression with statewide application: (1) What standard is the superior court to apply when divorced parents who are to work jointly in determining school placement for their child are unable to agree? (2) May a child be precluded from attending a private religious school solely because one parent objects on religious grounds? and (3) May a parent be required to pay tuition for a private religious school as part of his or her child support obligation?

¶2 As set forth below, we hold: (1) The superior court is to apply a best interests standard when parents obligated to work together are unable to reach agreement as to school placement; (2) A private religious school may not be precluded from consideration as the child's school placement merely because it is a private religious school; and (3) The superior court has authority to order an objecting parent to pay child support for the school placement that is determined to be in the best interests of the child even if it is a private religious school.

### I.

¶3 Paolla Jordan ("Mother") and Gerald Romine ("Father") are the parents of two minor children, a daughter M., age 10, and a son A., age 7. Mother and Father divorced in

December 2005. In the dissolution decree, the court approved of Mother and Father's parenting plan and awarded Mother and Father joint custody of M. and A. The court also awarded Mother child support.

¶ 4 Both M. and A. have attended a private religious school since kindergarten. Until January of this year, M. had attended the private religious school continuously for five years both before and after the divorce. She started attending the school in 2003 and is now in fifth grade. A. began attending the school after the divorce, in 2006, with the consent of both parents when he started kindergarten. He is now in second grade. Tuition for both children to attend the school costs $850 per month.

¶ 5 On September 5, 2007, Father filed a petition to modify child support, requesting a 54% reduction of his monthly payments. Mother requested a hearing on the matter. The superior court, Commissioner Steven Kupiszewski presiding, held an all-day evidentiary hearing on January 28, 2008. Father submitted to the court an updated affidavit of financial information and contended that he did not think it was economically feasible for his children to continue in a private school. Mother asserted that she and Father had previously agreed that the children would be home-schooled or placed in a private school, and she requested that the court include the children's $850 per month school tuition in Father's child support payments. Commissioner Kupiszewski noted that the parties entered a settlement agreement as to "all issues" but that "[t]he Agreement makes no mention of the modification of child support before this court nor any agreements regarding the issue of private schooling for the children." Accordingly, on April 30, 2008, the Commissioner ruled as to each issue. The April 30 order required Father to pay the full tuition costs for both children at the private religious school on the basis that "this was the parties' pattern and practice and neither parent may modify the choice of schooling without the consent of the other parent or absent a court order." Father appealed the April 30 order to this court. That appeal is presently pending.

¶ 6 Father subsequently filed a petition in the family court to enforce the parenting plan. In his petition, Father argued that the April 30 ruling violated his constitutional right to direct the education and upbringing of his children and that it violated the terms of the parenting plan. Among other arguments, Mother asserted in response that the issue of which school the children should attend was addressed in the April 30 order. The family court, through Judge John Rea, issued a second order on December 9, 2008, reducing Father's child support obligations and requiring Mother to choose a different school for the children at the end of the term. The December 9 order effectively "reversed" the April 30 order which was (and is) pending appeal, and precluded the children from attending the private religious school after the month's end. In pertinent part, the December 9 order stated: "[F]or the purpose of our hearing today, if Father objects to continuing in the religious school, he has a right to make that objection, and the Court will uphold that objection." Mother then filed a special action asserting that the December 9 order was an abuse of discretion "by holding that in all cases, if one parent objects to [the] children attending a religious school, the children must be removed from that school."

¶ 7 After receiving the petition, we ordered the parties to file simultaneous briefs on whether the superior court had any jurisdiction to issue the December 9 order as it addressed the same issue presented in the April 30 order. See State v. O'Connor, 171 Ariz. 19, 21, 827 P.2d 480, 482 (App.1992) ("[A]n appeal generally divests the trial court of jurisdiction to proceed except in furtherance of the appeal."). As a result of the parties' briefing, this court discovered the April 30 order was unsigned, a necessary requirement for an appeal. Eaton Fruit Co. v. Cal. Spray–Chemical Corp., 102 Ariz. 129, 130, 426 P.2d 397, 398 (1967) (holding that the court did not have jurisdiction to consider the appeal because the underlying minute entry order "was not signed by the judge and filed with the clerk of the court"). The department of this court before which the appeal of the April 30 order is pending then issued an order pursuant to Eaton Fruit, suspending the appeal in that matter and

giving the parties an opportunity to obtain a signed version of the April 30 order. A form of signed order has now been filed.

## II.

¶ 8 As the matter before us is a special action, our first task is the issue of jurisdiction. Special action jurisdiction is appropriate when there is no "equally plain, speedy, and adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a). Special actions may not be used as a substitute for an appeal. *Neely v. Rodriguez*, 165 Ariz. 74, 76, 796 P.2d 876, 878 (1990) (recognizing the "strong Arizona policy against using extraordinary writs as substitutes for appeals"). However, "where an issue is one of first impression of a purely legal question, is of statewide importance, and is likely to arise again, special action jurisdiction may be warranted." *Vo v. Superior Court*, 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992); *see also In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 154, 945 P.2d 1283, 1285 (1997) (accepting special action jurisdiction as the issue was "one of first impression in Arizona"; had "statewide significance," affecting more than just the parties involved; and was "purely a question of law"); *Qwest Corp. v. Kelly*, 204 Ariz. 25, 27, ¶ 3, 59 P.3d 789, 791 (App.2002) (accepting special action jurisdiction when "significant threshold questions raised are purely legal and of statewide importance"). This is such a case.

¶ 9 The three issues presented to us here (the applicable legal standard regarding a minor's school placement when parents are divorced, whether a private religious school may be disqualified for a child's school placement simply because it is a religious school and, if not, whether child support may be awarded based on tuition for a private religious school) are pure questions of law that are likely to recur and have statewide importance. As set forth in detail below, every joint custody arrangement in the state of Arizona is required to have a parenting plan that addresses education for the child. *See infra* ¶ 19; *see also* Ariz.Rev.Stat. ("A.R.S.") §§ 25–403.01, 25–403.02(A)(1) (2007). Thus, the issues arising here may arise in any joint custody case in Arizona when one parent

desires the child to attend a private religious school and the other objects, unless the parenting plan leaves school choice to one parent alone or specifically addresses the parties' intentions with regard to private religious schools. Accordingly, jurisdiction is appropriate on this ground.

¶ 10 Based on the foregoing factors, we conclude that it is appropriate to exercise our discretion to accept special action jurisdiction. Having done so, we turn now to the three issues presented.

## III.

¶ 11 Because of the sequence in which the issues presented were ruled on below, we address first the question whether the superior court may decline to consider one parent's choice of a private religious school for a child solely on the basis of the other parent's objection on religious grounds. We first examine pertinent terms of the parties' parenting plan. They provide:

7. The children shall attend school in the area and school district in which Mother resides, unless otherwise agreed to by Mother.

\* \* \*

10. Both parents shall make all major educational decisions together for the children.

11. Mother and Father shall raise the minor child in the church of his/her choice/faith/religion. Mother and Father shall cooperate concerning all religious decisions for the children.

\* \* \*

16. ... [a]ny disputes or conflicts with reference to childcare or major life decisions that cannot be resolved between the parties, or in the event of substantial and/or material changes which may occur making this parenting plan logistically impractical, the parties will submit their dispute to mediation ... before filing any action with the court.

In construing these provisions of the parenting plan, the trial court ruled as follows:

As to the question of the school that the children are currently attending, the evi-

dence is clear that the academics in the school have been of benefit to the children. There is no reason to disapprove the school on the basis of academics. At the same time, it is clear that religion is an integral part of the curriculum, and the children are exposed to that. The parenting plan provides that both parents may raise the children in the church/faith of their choice. Neither parent has a veto power over the other parent's religious instruction and religious practices during that parent's parenting time. Both parents have the right to impart the religious training and follow the religious practices of their choice in a very broad range as long as it is not detrimental in some way to the children, or in some cases denigrating to the other parent, but that is not part of this case. *School is a time in which essentially it is neither parent's parenting time or both parent's parenting time. So, it is a theologically neutral time, and one parent does not have the authority to impart religious instruction during that time over the objection of the other parent, and this school has as an integral part of its curriculum religious instruction.*

The Court reads the parenting plan to give Mother some discretion in choosing schools, and for the purpose of our hearing today, *if Father objects to continuing in the religious school, he has a right to make that objection, and the Court will uphold that objection.* At the same time, the children should certainly finish the existing term at the school where they are regardless of Father's objection. After the existing term is finished at the end of December 2008, Mother shall have the discretion to choose a school within her area or district, unless the parties agree otherwise.

(Emphasis added.)

¶ 12 The superior court's interpretation of the parenting plan precludes the children from attending the private religious school at issue.[1] Mother argues that the family court in effect gave Father "veto power" with regards to the children's schooling because the family court held that "if Father objects to continuing in the religious school, he has a right to make that objection, and the Court will uphold that objection." Father argues that because he has joint authority over the religious and educational upbringing of his children, he may refuse to consent to their attendance at a private religious school.

¶ 13 We agree with Mother that the court in effect vetoed her position. The parenting plan provides for mutual cooperation as to the children's education and religious upbringing: "Both parents shall make all major educational decisions together for the children." Thus, the parenting plan requires both parents to decide together the appropriate school. The family court, however, acted to exclude Mother's preference and accept Father's preference, finding it must uphold Father's objection to continuing in the religious school. The court explained that both parents "have the right to impart religious training," but that school "is a theologically neutral time." As one scholar, now judge, noted: "The problem with the secularization baseline is that it is not neutral in any realistic sense." Michael W. McConnell, *Religious Freedom at a Crossroads*, 59 U. Chi. L.Rev. 115, 189 (1992).[2] Excluding religious schooling from all potential school options, in effect, eliminates the option of religious schooling rather than treating it neutrally. *See id.*

¶ 14 The United States Supreme Court has long held that parents have a fundamental liberty interest, under the Constitution, "to direct the upbringing and education of children under their control." *Pierce v. Soc'y of Sisters of the Holy Names*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *see also Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (holding that the liberty guaranteed by the Fourteenth Amendment includes free-

1. The parenting plan provides for mediation. The record does not show that any mediation has taken place. Neither party, however, has invoked that portion of the parenting plan in this special action, and we do not address it. We note that Mother raised the issue of required mediation below. Our decision is without prejudice to Mother's (or Father's) assertion of the mediation clause upon remand.

2. Judge Michael W. McConnell presently serves on the United States Court of Appeals for the Tenth Circuit.

dom to "establish a home and bring up children"). Thus, Mother has a constitutionally guaranteed right to participate in the education of her children, as does Father, and that right is not limited to providing education in a secular school as contrasted with a private religious school. Just as importantly, as described below, it may be directly contrary to the child's best interests to preclude a child from attending a religious school based solely on the objection of an opposing parent.

¶ 15 Further, to the extent the superior court based its view that education must be "a theologically neutral time" on any specific terms of the parenting plan, it erred. As the parenting plan was incorporated into the dissolution decree, we review the interpretation of the parenting plan itself *de novo. See Palmer v. Palmer*, 217 Ariz. 67, 69, ¶ 7, 170 P.3d 676, 678 (App.2007) (applying a *de novo* review "regarding the interpretation of statutes and decrees of dissolution"). The parenting plan is also akin to a type of contractual agreement between the parties, which must be approved by the court. It was agreed to in writing by both Father and Mother. Viewed in that light *de novo* review is also appropriate. *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, 192, ¶ 29, 33 P.3d 518, 526 (App.2001) ("We review de novo ... any issues concerning contract interpretation.").

¶ 16 The parenting plan provides for mutual agreement, or, if anything, grants a preference on some issues to Mother ("The children shall attend school in the area and school district in which Mother resides, unless otherwise agreed to by Mother."). Nothing in the parenting plan gives either party the ability to object, based on the terms of the parenting plan, to placement in a private religious school. This is particularly so when one of the children was enrolled in the school prior to the divorce and continued to be enrolled in that school after the divorce. Had the parents wished to agree that a private religious school could not be considered for the children's school placement, they could have done so. *See Giacalone v. Giacalone*, 876 S.W.2d 616, 619 (Ky.Ct. App.1994) (holding that the parents' agreement with regards to custody did "not grant [the father] a veto power over the type of school chosen" when it stated that he "shall have the right to participate in decisions concerning each child's education" and that because he "could have bargained for veto power over the selection of a high school, but did not," the court could not "grant him power that he did not bargain for in the agreement"). Of course, this is not to suggest that the parties may so agree absent approval of the court. All terms in a parenting plan are subject to the court's approval to ensure that they are in the best interests of the child. A.R.S. § 25–403.01(C).

¶ 17 The family court resolved the dispute of school placement by holding, as a matter of law, that any objection on religious grounds by Father to a private religious school would be sustained. This was error.[3]

## IV.

¶ 18 Having resolved that the court may not preclude consideration of a private religious school simply because it is religious, we now turn to the question of the applicable standard to resolve the dispute over school placement. Mother argues that the family court should have applied a best-interests standard rather than focusing only on Father's objection to the religious school. We agree.

[12] ¶ 19 In determining what standard to apply to this dispute of educational placement, we look to the statutory scheme to guide us. *Logan v. Forever Living Prods., Int'l*, 203 Ariz. 191, 193, ¶ 8, 52 P.3d 760, 762

---

3. We further conclude that the trial court erred by ruling that the re-enrollment of the children in the same school they had been attending for several years constituted a new "major educational decision" that required the consent of both Mother and Father. To the contrary, Father apparently had originally consented to the children's attendance at the religious school.

Now, he has changed his mind and wants the children to attend a public school. Therefore, it is Father, rather than Mother, who wishes to reach a new "major educational decision" under the terms of the parenting plan, and without Mother's agreement, it is Father who has the burden to show that his proposed change in the children's school is in their best interests.

(2002) ("We begin our analysis with the statute ... our foremost goal is to discern and give effect to legislative intent."). The statutory procedure for ordering joint custody requires that the family court find joint custody to be "in the child's best interests." A.R.S. §§ 25–403(A), –403.01(B), (C). Joint custody may be awarded whether or not the parties agree to it. A.R.S. § 25–403.01(B). When there is no agreement, the court must make "specific written findings of why the order is in the child's best interests." *Id.* Regardless of whether joint custody is awarded over the objection of one parent or upon the agreement of both, the parents are required to submit a proposed parenting plan. A.R.S. § 25–403.02(A). The parenting plan must include "each parent's rights and responsibilities ... for decisions in areas such as education ...." A.R.S. § 25–403.02(A)(1). Thus, in any child custody setting in the state of Arizona in which joint custody is awarded, a plan with regard to educational decisions for the child must be submitted. The legislature has also provided that "[i]f the parents are unable to agree on any element to be included in a parenting plan, the court shall determine that element." A.R.S. § 25–403.02(B). Overriding all of the court's considerations with regard to both approving joint custody and the parenting plan which is necessary for a joint custody order, is that the order "is in the child's best interests." A.R.S. § 25–403.01(B), (C). Thus, based on this clear statutory directive, we have no difficulty in concluding that when post-decree disputes arise under the specific terms of a parenting plan included as part of a joint custody order, a best-interests standard should be applied. Other jurisdictions have applied this same standard. *Infra* ¶ 25.

¶ 20 Father objects to applying this standard on the basis that it interferes with his constitutional right to direct the upbringing of his child. What Father's argument does not accommodate is that *each* parent has a constitutional right to the upbringing of his or her child. *Pierce*, 268 U.S. at 534–35, 45 S.Ct. 571; *Meyer*, 262 U.S. at 399, 43 S.Ct. 625. In this case, however, each parent has

chosen to exercise that constitutional right in a different manner. Consequently, the court is called upon to resolve that conflict. In such a setting, there is no usurpation by the court of either parent's constitutional rights. We find apt the Alabama Court of Civil Appeals' description of this scenario:

> Like the courts in other states, Alabama courts have long recognized that one of the bundle of rights associated with custody is the right to direct and support the education of the child. Alabama law further recognizes that parents sharing joint legal custody without modification have equal constitutional rights to the care, custody, and control of the child and that, therefore, as a general rule, a court may apply the best-interests standard in a custody dispute between such parents without implicating the Fourteenth Amendment due-process rights of either parent.

*Morgan v. Morgan*, 964 So.2d 24, 31, 32 (Ala.Civ.App.2007) (citations omitted) (holding that family court's exercise of jurisdiction granting the mother's motion to place their child in a public school "did not violate the father's constitutional right to control the education of the child").

¶ 21 Mother also argues that we should be wary of the "religious argument" in this case, given that Father enrolled his first child in the private religious school, remained silent when his second child was also enrolled in the school, and did not raise any religious objections to the private school until Mother was awarded additional child support to pay for the tuition costs. Father's religious-based objection came within months of his statement to the court that he was "amenable" to the children continuing at a private Christian school, "if Mother desires to pay the tuition" notwithstanding that he was not a Christian. In terms of establishing the pertinent legal standard for reviewing a disputed educational placement, we need not consider whether or not Father's religious objection is genuinely held or based on a monetary or other motive. It is irrelevant to the issue before us.[4] For our pur-

---

4. We do not preclude the trial court's consideration of this factor, however, as it may be rele-

vant to evaluating the Father's wishes which are

poses, it suffices simply to hold that Father's religious objection, whether genuine or not, cannot be the basis of precluding the superior court from *determining* what educational placement is in the child's best interests. *See Hoedebeck v. Hoedebeck,* 948 P.2d 1240, 1242, ¶ 8 (Okla.Civ.App.1997) ("This religious argument is neither new nor rare. Any time divorced parents have different religious faiths, [the religious argument] may be made by the losing party. The fact that one parent is awarded custody of the children does not, in itself, violate the other parent's religious rights.").

¶ 22 Our holding is also consistent with "the firmly established principle that at all levels, at all times and in all forums, the welfare and best interest of the child is of prime and overriding importance as measured by the particular facts and circumstances of each case before the courts." *Funk v. Ossman,* 150 Ariz. 578, 581, 724 P.2d 1247, 1250 (App.1986). Of course, the "best interests of the child" standard does not and cannot abrogate a fit parent's constitutional right to direct the upbringing of his or her child. *Pierce,* 268 U.S. at 534–35, 45 S.Ct. 571; *Meyer,* 262 U.S. at 399, 43 S.Ct. 625. Unless fit parents disagree, the courts have no jurisdiction to become involved with a fit parent's choices for the upbringing of the child and override that paramount parental privilege. The best-interests standard only applies to fit parents when they are unable to agree. *See Morgan,* 964 So.2d at 31–32; *Hoedebeck,* 948 P.2d at 1242, ¶ 8.

¶ 23 Having established that the best-interests standard applies to a dispute about an educational placement and that the superior court may not rule out a placement in a private religious school simply because it is a private religious school, we now turn to the factors which should be applied. Here again, we look first to the statutory scheme. *Logan,* 203 Ariz. at 193, ¶ 8, 52 P.3d at 762. There is no specific statutory enumeration as to factors to be considered with regard to school placement. Accordingly, we draw upon the factors that the legislature has set forth for a determination of best interests as to be considered when determining what is in

to custody in general as stated in A.R.S. § 25–403(A) and modify them to reflect school placement.

The court shall consider all relevant factors, including:

1) the wishes of the child's parent or parents as to [school placement]

2) the wishes of the child as to [school placement]

3) the interaction and interrelationship of the child with [persons at the school] who may significantly affect the child's best interests, and

4) the child's adjustment to [any present school placement].

The family court should consider each of the foregoing factors. This listing, however, is not exclusive. As noted under § 25–403(A), the court should consider all relevant factors for guidance.

¶ 24 Other jurisdictions, in applying a best-interests standard to the school placement question, have also considered the following factors. Arizona trial courts should consider them when applicable and as the circumstances warrant: (1) the child's educational needs; (2) the qualifications of the teachers at each school; (3) the curriculum used and method of teaching at each school; (4) the child's performance in each school; (5) whether the proposed or current school situation complies with state law; (6) whether one school is more suitable given the child's medical condition or other special needs; (7) whether one school would allow the child to maintain ties to a nonresidential parent's religious beliefs; (8) whether requiring the child to leave the child's current school would aggravate the difficulties of the divorce; and (9) whether continuing in a particular school would be essential or beneficial to the child's welfare. *See Donna G.R. v. James B.R.,* 877 So.2d 1164, 1168–69 (La. Ct.App.2004) (finding that homeschooling was not in the best interests of the children); *In re Marriage of Manning,* 871 S.W.2d 108, 110–11 (Mo.Ct.App.1994) (selecting a private school for the child, given that she had gone there the past nine years and not allowing her to continue would make the dissolution the child's best interests. *See infra* ¶¶ 24–25.

even more difficult); *Karetny v. Karetny*, 283 A.D.2d 250, 724 N.Y.S.2d 410, 410–11 (2001) (finding that it was not in the child's best interests to be educated only in an Orthodox Jewish yeshiva given that the longer school day at the yeshiva compared to a public school aggravated the child's Tourette's Syndrome); *In re Marriage of Shore*, 135 Ohio App.3d 374, 734 N.E.2d 395, 403 (1999) (upholding ruling that child's "best interests were served receiving a religious education"); *Staub v. Staub*, 960 A.2d 848, 856 (Pa.Super.Ct.2008) (concluding that home schooling was in the children's best interests); *Anderson v. Anderson*, 56 S.W.3d 5, 9 (Tenn.Ct.App.1999) (concluding that home schooling was not in the child's best interests).

¶ 25 Therefore, to conclude this issue, the court must consider whether it is in the best interests of the children to continue attending the private religious school or to transfer to another school. The court may not preclude the private religious school as an educational placement simply because it is religious.

## V.

¶ 26 We regard child support as a separate issue and therefore separately address whether Father may be required to pay for the school chosen under a best-interests standard. We do not consider that the obligation to pay child support for a private religious school is necessarily tied to the determination that attending a private religious school is in the child's best interests. However, as described below, it would seem unlikely that, if it were in the best interests of the children to continue attending (or be placed in) a private religious school, those expenses would not be factored into the child support equation. The exception to this may be when, even though it is in the child's best interests to attend a private religious school, it is still not consistent with "the ability of the parents to pay." Arizona Child Support Guideline 1(A), A.R.S. § 25–320 app. ("Guidelines").

¶ 27 We review a family court's decision as to child support for abuse of discretion. *In re Marriage of Robinson and Thiel*, 201 Ariz. 328, 331, ¶ 5, 35 P.3d 89, 92 (App.2001). We review *de novo* a family court's interpretation of the Arizona Child Support Guidelines. *Id.* The applicable Child Support Guideline, Guideline 9(B)(2), provides that in determining the total child support obligation, the court "[m]ay add ... [a]ny reasonable and necessary expenses for attending private or special schools or necessary expenses to meet particular educational needs of a child, when such expenses are incurred by agreement of both parents or ordered by the court."

¶ 28 The family court determined there was no agreement by both parents and concluded that it would only include private school tuition "if there [was] a written agreement by both parents." Therefore it did not include the costs of tuition in Father's monthly child support obligation.

¶ 29 The family court's analysis is flawed as it does not acknowledge the disjunctive in Guideline 9(B)(2): child support based on an agreement of the parties *or* as ordered by the court. As set forth above, the court may find a private religious school is in the best interests of the children and order such a school placement without an agreement between the parties. *Supra* ¶¶ 20–22. The family court then has the ability, notwithstanding the lack of agreement by a parent, to order the objecting parent to pay the costs of tuition if the court determines that the tuition costs are "reasonable and necessary." Guideline 9(B)(2). The question of what is "reasonable and necessary" is within the sound discretion of the family court.

¶ 30 Father argues that the family court cannot constitutionally require him to "financially support a religious institution that he does not subscribe to." In the setting of child support, other courts that have examined this issue have rejected this argument, and we do as well. An objecting parent is not being required to support a religious institution; rather, the objecting parent is being required to make a child support payment to his or her co-parent to provide for the child's education in a school

the court has determined to be in the child's best interests. *See Flynn v. Flynn,* 7 Conn.App. 745, 510 A.2d 1005, 1007 (1986) (rejecting defendant's religious objection to paying for a parochial school, asserting that the court's order "in no way implicate[d] the constitutional provisions cited by the defendant" but "merely authorized a payment by the defendant for the education of his children," who had attended parochial school since kindergarten, paid for by defendant); *see also Hoefers v. Jones,* 288 N.J.Super. 590, 672 A.2d 1299, 1307–09 (Ch. Div.1994) (rejecting the defendant's arguments that "requiring him to contribute towards tuition costs at King's Christian School constitute[d] an involuntary support of religion," noting that the defendant was paying the tuition costs on his children's behalf, not his own behalf, in exchange for educating his children—a child-rearing need he was required to provide—and not for the purpose of financially supporting that institution); *Smith v. Null,* 143 Ohio App.3d 264, 757 N.E.2d 1200, 1202–04 (2001) (holding that the trial court did not violate the federal or state constitution by requiring the father to pay tuition for his son to attend a Catholic school, noting that the father's payments would not be made to the school itself but rather to the other parent, that the government was not expressing a preference for a particular religion, and that parents are obligated to pay for their children's educational expenses).

¶ 31 Thus, if the trial court concludes that it is in the child's best interests to attend a private religious school, the trial court may also determine that such expenses are "reasonable and necessary" and order a parent to participate in paying for them, notwithstanding the parent's objection. There is no constitutional impediment to such an order. *See supra* ¶ 30. As noted at the outset, however, the trial court may also decline to order these expenses based on "the ability [or inability] of parents to pay." Guideline 1(A).

## VI.

¶ 32 For the foregoing reasons, we vacate the family court's order and remand this case to the family court for proceedings consistent with this decision.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and JOHN C. GEMMILL, Judge.