IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

DEBORAH C. BAKER,
*Petitioner/Appellant,*

*v.*

MATTHEW M. MEYER,
*Respondent/Appellee.*

No. 2 CA-CV 2014-0107
Filed April 3, 2015

Appeal from the Superior Court in Pima County
No. D20073115
The Honorable Danelle B. Liwski, Judge

**VACATED AND REMANDED**

COUNSEL

Ann Nicholson Haralambie, Attorneys, P.C.
By Ann M. Nicholson Haralambie, Tucson

Law Offices of Robert G. Lewis, P.C.
By Robert G. Lewis, Tucson
*Counsel for Petitioner/Appellant*

Solyn & Lieberman, PLLC
By Melissa Solyn and Scott Lieberman, Tucson
*Counsel for Respondent/Appellee*

**OPINION**

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Miller and Judge Howard concurred.

E S P I N O S A, Judge:

**¶1**     This appeal arises from a dispute over sending a child to an out-of-state boarding school and the resulting substantial reduction in the mother's parenting time with that child. Appellant Deborah Baker argues the trial court erred in ruling in favor of her former husband, appellee Matthew Meyer, and ordering that their son, N., attend a high school in California. For the following reasons, we vacate the order and remand the case for further proceedings.

**Factual and Procedural Background**

**¶2**     We view the evidence in the light most favorable to upholding the trial court's decision. *See Little v. Little*, 193 Ariz. 518, ¶ 5, 975 P.2d 108, 110 (1999). Baker and Meyer were married in 1995 and had three children: J., born in 1998, N., born in 2000, and B., born in 2004. In March 2008, a decree of dissolution of marriage was entered, which incorporated the "Meyer Family Parenting Agreement." Under the decree and parenting agreement, Baker and Meyer have joint legal and physical custody and "agree to share in key decisions related to the children's education, healthcare, and religious upbringing." The agreement further provides, "The children will be with each parent for seven consecutive days on an alternating basis," and, "The parent that does not have parenting time with the children for seven consecutive days will pick them up at school on Tuesday and Thursday and will return them to the other parent at 7:00 p.m." It also specifies which parent has the children for various birthdays and holidays, and prohibits "either parent . . . commit[ing] a child to an activity which . . . infringes upon the other parent's parenting time without first obtaining the consent of the other parent."

¶3        In February 2014, Meyer filed a motion "regarding [the] children's school enrollment," requesting "that two of the minor children . . . be permitted to enroll and/or re-enroll in the school of their choice." Specifically, J. would return for his junior year of high school to the Cate School, a boarding school in California, and N. would enroll at Cate for his freshman year. Although Baker first objected to J. returning to Cate, she later agreed because he already had been a Cate student for two years and wished to complete high school there.

¶4        Baker, however, continued to object to N. enrolling at Cate, preferring that he attend University High School (UHS) in Tucson so that she could maintain her parenting time with him. Meyer disagreed, pointing out that he and three of his siblings had attended Cate, that attending Cate was "turning into [a family tradition]," and that N. wished to attend there, a preference he later expressed to both the conciliation and trial courts.

¶5        In its ruling, the trial court determined the issue to be one of school placement, rather than relocation or modification of parenting time as urged by Baker. The court reviewed specific aspects of UHS and Cate and found "[n]either school is essential and neither is more beneficial as a whole for N[.]" The court then concluded it was in N.'s "best interest to attend Cate," given his expressed wishes and the evidence of "strain on the children when they are back and forth between their parents' homes" that was "affecting the relationship between the children and their parents." There was no question, however, as to the fitness of either parent. We have jurisdiction over Baker's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## Discussion

¶6        It is well established that parents have fundamental rights in the custody and control of their children under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court"); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196

Ariz. 246, ¶ 11, 995 P.2d 682, 684 (2000) ("This court and the United States Supreme Court have long recognized that the right to the control and custody of one's children is a fundamental one."). Arizona's legislature similarly has observed that "[t]he liberty of parents to direct the upbringing, education, health care and mental health of their children is a fundamental right." A.R.S. § 1–601(A); *see also* A.R.S. § 1–602. The outlines of that right are made clear under Arizona public policy and statutes, which direct that a child's best interest includes "substantial, frequent, meaningful and continuing parenting time with both parents," A.R.S. § 25-103(B), (C), and which protect that right absent exceptional circumstances. *See* A.R.S. § 25-411(J) ("the court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger seriously the child's physical, mental, moral or emotional health");[1] *cf. Woodworth v. Woodworth*, 202 Ariz. 179, ¶ 9, 42 P.3d 610, 611 (App. 2002) (visitation rights of parents contribute to child's well-being and are therefore specially protected by legislature).

¶7 Joint custody[2] arrangements in Arizona require a parenting plan that addresses legal decision-making, each parent's "rights and responsibilities for the personal care of the child," and decisions regarding education, health care, and religious training. A.R.S. § 25-403.02(C)(1), (2). The plan also must contain "[a] practical schedule of parenting time for the child, including holidays and school vacations." § 25–403.02(C)(3); *see also* A.R.S. § 25–403.01. Courts are directed to "adopt a parenting plan that provides for both parents to share legal decision-making regarding their child and that maximizes their respective parenting time." § 25-403.02(B). We review a parenting agreement de novo because it is incorporated

---

[1]We are not presented here with the question of whether a reduction in the amount of parenting time constitutes a restriction of parenting time rights pursuant to § 25-411(J) and therefore do not address it.

[2]In 2012, the legislature replaced the term "custody" with "legal decision-making and parenting time" in title 25. 2012 Ariz. Sess. Laws, ch. 309, §§ 4, 5.

into the dissolution decree and because it is "akin to a type of contractual agreement between the parties." *Jordan v. Rea*, 221 Ariz. 581, ¶ 15, 212 P.3d 919, 926 (App. 2009). As noted above, the parties' parenting plan here provided that the children were to spend alternating weeks with their parents throughout the year. However, the trial court's order that N. attend Cate and divide his time at home equally between his parents reduced Baker's parenting time[3] with N. from 182 to 61 days per year.

¶8        The trial court viewed the issue whether to permit N. to enroll in an out-of-state school as one of school placement and applied the best interest factors set forth in *Jordan*. In that case, a father objected to his children continuing their education at a private religious school, and this court "dr[e]w upon the factors that the legislature has set forth for a determination of best interests as to custody in general as stated in A.R.S. § 25–403(A) and modif[ied] them to reflect school placement." *Jordan*, 221 Ariz. 581, ¶ 23, 212 P.3d at 928. We directed the trial court to "consider all relevant factors," including the following modified § 25-403(A) factors:

> "1)    the wishes of the child's parent or parents as to [school placement]
>
> 2)    the wishes of the child as to [school placement]
>
> 3)    the interaction and interrelationship of the child with [persons at the school] who may significantly affect the child's best interests, and

---

[3]"Parenting time" is defined by statute as "the schedule of time during which each parent has access to a child at specified times." A.R.S. § 25-401(5).

> 4)    the child's adjustment to [any present
> school placement]."[4]

*Id.*, *quoting* § 25-403(A) (alterations in *Jordan*). We formulated these factors, however, in the context of a child's placement at a local school, and neither parent had alleged a change in parenting time. *See id.* ¶¶ 9, 11, 16. That is not the situation here.[5] N.'s attendance at Cate will reduce Baker's yearly time with him by at least 121 days, constituting sixty-six percent of the time she had been allocated in the decree and a profound curtailment of her parental rights.[6] The trial court did not address that impact, applying *Jordan* to focus on the qualities of the schools, the wishes of the child, and "strain on the children when they are back and forth between their parents' homes."[7]

---

[4]We also suggested nine additional non-statutory factors to be assessed in determining a child's school placement. *Jordan*, 221 Ariz. 581, ¶ 24, 212 P.3d at 928.

[5]Since *Jordan* was decided in 2009, the legislature amended § 25-403, altering several of the factors employed by the court. *See* 2012 Ariz. Sess. Laws, ch. 309, § 5. As the issue here is not one of local school placement, the *Jordan* factors are inapplicable, and we express no opinion as to the effect of the legislature's amendments on the *Jordan* analysis.

[6]We note that in view of Meyer's testimony that he considered attendance at Cate a "family tradition," this issue could have been broached at the time the parenting agreement was negotiated. *See Jordan*, 221 Ariz. 581, ¶ 16, 212 P.3d at 926 (issue of attendance at private religious school could have been addressed in parenting plan).

[7]The evidence of strain from moving between homes came from summarized *in camera* interviews with N. Baker, however, testified that family friction centered primarily on the boarding school issue. Although the child's wishes may be considered by the court, it is but one factor among others and not decisive. § 25-

**¶9** Baker argues, as she did below, that the issue in this case is a substantial and disputed modification of parenting time.[8] We agree that an important issue in determining N.'s best interests, and a principal point of contention between the parties, is the reduction in parenting time that would result from N. attending an out-of-state boarding school. *See generally Thompson v. Thompson*, 217 Ariz. 524, ¶ 14, 176 P.3d 722, 725 (App. 2008) (relocation of child can "interfere with the custody or parenting time granted to the other parent"); *T.D. v. F.X.A.*, 148 So. 3d 187, 194 (La. Ct. App. 2014) (order that child attend boarding school a custody decision, not school choice; sending child to school in Utah against mother's wishes essentially abrogated her parenting status and was change of custody); *cf. Calvin B. v. Brittany B.*, 232 Ariz. 292, ¶ 32, 304 P.3d 1115, 1121-22 (App. 2013) ("parent entitled to reasonable parenting time 'to ensure that the minor child has substantial, frequent, meaningful and continuing contact with the parent'"), *quoting* § 25-403.01(D). Accordingly, we conclude the trial court erred as a matter of law in determining this issue as one of school choice.

**¶10** Nevertheless, we would not reverse the trial court's decision if, despite choosing the wrong framework for the analysis, it considered the proper factors and made appropriate findings. In

---

403(A)(4); *cf. Ellis v. Ellis*, 840 So.2d 806, 813 (Miss. Ct. App. 2003) ("'While there is nothing wrong with the children being heard regarding their wishes, our law proceeds on the assumption that they are nevertheless children and, thus, more interested in the desire of the moment than in considering the long range needs for the development of a healthy relationship with both parents where that is possible.'" (citation omitted)).

[8]Baker alternatively asserts N.'s attendance at boarding school is governed by A.R.S. § 25-408 because that statute addresses a parent's request to "[r]elocate the child outside the state." § 25-408(A)(1). But we are unpersuaded of its application here, given the statute's references to "the nonmoving parent" and "the parent with whom the child will reside after the relocation." § 25-408(C), (H)(4).

Arizona, the trial court may modify an order granting or denying parenting time whenever modification would serve the best interests of the child. § 25-411(J). Those interests however, are informed, *inter alia*, by "parenting time with both parents." § 25-103(B). We review an order modifying parenting time for an abuse of discretion, *Owen v. Blackhawk*, 206 Ariz. 418, ¶ 7, 79 P.3d 667, 669 (App. 2003), but questions of statutory interpretation are reviewed de novo, *Palmer v. Palmer*, 217 Ariz. 67, ¶ 7, 170 P.3d 676, 678 (App. 2007) (applying de novo review "regarding the interpretation of statutes and decrees of dissolution").

**¶11** If parents are unable to agree on any element to be included in a parenting plan, the court must determine that element "[c]onsistent with the child's best interests." § 25–403.02 (B), (D); *see also* § 25-403(A) (governing determination of parenting time, whether made "originally" or as modification); *Jordan*, 221 Ariz. 581, ¶ 19, 212 P.3d at 927 (based on "clear statutory directive" of sections 25-403 and 25-403.02 (A), (B), "we have no difficulty in concluding that when post-decree disputes arise under the specific terms of a parenting plan included as part of a joint custody order, a best-interests standard should be applied"). In determining parenting time, a court "shall consider all factors that are relevant to the child's physical and emotional well-being," including:

> 1. The past, present and potential future relationship between the parent and the child.
>
> 2. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interest.
>
> 3. The child's adjustment to home, school and community.
>
> 4. If the child is of suitable age and maturity, the wishes of the child as to legal decision-making and parenting time.

>   5. The mental and physical health of all
>   individuals involved.

§ 25-403(A).[9]  Absent evidence to the contrary, as earlier noted, it is generally in a child's best interests to have "substantial, frequent, meaningful and continuing parenting time with both parents." § 25–103(B).  When parenting time is at issue, the court must make "specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." § 25-403(B).  Failure to make the requisite findings in an order or on the record constitutes an abuse of discretion.  *Nold v. Nold*, 232 Ariz. 270, ¶ 11, 304 P.3d 1093, 1096 (App. 2013).

**¶12**        As Baker points out, title 25 has been amended to place new emphasis on the fundamental importance of parenting time. *See* 2010 Ariz. Sess. Laws., ch. 221, § 1.  In 2010, the legislature required provisions of title 25 to be applied in a manner consistent with the purposes of the title, including the "declared public policy of this state" that a child's best interests include "substantial, frequent, meaningful and continuing parenting time with both parents." § 25-103(B), (C).  And in 2012, additional provisions were adopted to the same effect throughout the title. *See, e.g.*, A.R.S. § 25-403(A)(1) (in determining legal decision-making and parenting time court considers "past, present and potential future relationship between the parent and the child"); *see also* 2012 Ariz. Sess. Laws, ch. 309, §§ 5, 7-8.  Here, the trial court failed to consider the child's interest in having "substantial, frequent, meaningful and continuing parenting time" with his mother, § 25-103(B), or make any related

---

[9] Meyer argues "a strict modification of parenting time analysis" would "not even make sense" in this case given that some § 25-403 factors would be inapplicable, such as § 25-403(A)(6) (requiring court to consider which parent more likely to allow "the child frequent, meaningful and continuing contact with the other parent").  To the extent we understand this argument, however, § 25-403 requires that a court consider "all factors that are relevant"; not those that are obviously inapplicable such as, in this case, § 25-403(A)(8) (domestic violence or child abuse).

BAKER v. MEYER
Opinion of the Court

findings pursuant to § 25-403. It also did not make any findings about the past and future relationship between N. and Baker, § 25-403(A)(1); the interaction and interrelationship of N. with both parents, his two brothers, and others who might affect his best interest, § 25-403(A)(2); N.'s adjustment to home and community, § 25-403(A)(3); and "[t]he mental and physical health of all individuals involved," § 25-403(A)(5).

¶13        Significantly, although the trial court issued a detailed and comprehensive six-page ruling, it did not directly address, or even mention, the central concern raised by Baker: the substantial effect on her parenting time. Instead, the court focused almost exclusively on the question of school placement and the *Jordan* choice-of-school analysis factors. Its only acknowledgment of the abrogation of Baker's time with N. was a fleeting observance that the child's out-of-state schooling would affect the parents equally.[10] We reject any notion that because the decision affected both parents, and the child's relocation was accepted, indeed initiated and advanced, by Meyer, Baker's rights and the mandate of § 25-103(B) and (C) could be disregarded. *Cf. Thompson*, 217 Ariz. 524, ¶ 14, 176 P.3d at 725 (in context of relocation statute, noting legislature intended to ensure that when both parents are granted custody or parenting

---

[10]Baker testified about the importance to her growing sons of ongoing, day-to-day interaction with both parents, as the parties' parenting plan provided. She told the court,

> [E]veryday[,] teenagers have challenges, and we have such a sound-bite of time . . . that anything that may be challenging is really hard to manage in a way that you would do if you had day-in and day-out contact with your kid. . . . Being around parents to help speak to your values and to help support and love you day-in and day-out as you're emerging into the adult that you're going to become, we only have a tiny period of time to make a difference.

time, "neither parent will interfere with the custody or parenting time granted to the other parent"); § 25–403.02(E) (no requirement for equal parenting time between shared legal decision-makers).

**¶14** In sum, while we recognize the trial court was faced with a close and difficult question, we conclude its failure to consider crucial statutory factors and to make the mandated findings as they pertain to the best interests of the child, was an error of law and requires that we remand the matter for the court to address those factors, pursuant to § 25-403. *See Nold*, 232 Ariz. 270, ¶ 15, 304 P.3d at 1097.

## Attorney Fees and Costs on Appeal

**¶15** Citing A.R.S. § 25-324 and Rule 21, Ariz. R. Civ. App. P., Meyer requests an award of his attorney fees and costs on appeal, asserting Baker's "arguments are without merit and contrary to Arizona law." As made clear in our discussion, we do not find Baker's position on appeal unreasonable but, in fact, meritorious, and Meyer's request for fees is therefore denied. *See In re Marriage of Gibbs*, 227 Ariz. 403, ¶ 23, 258 P.3d 221, 229 (App. 2011). We likewise decline his request for costs, as he has not prevailed on appeal and, therefore, is not the "successful party" under A.R.S. § 12-341.

## Disposition

**¶16** For the foregoing reasons, the trial court's order is vacated and the case is remanded for further proceedings consistent with this opinion. Baker is entitled to her costs on appeal pursuant to § 12-341 and upon compliance with Rule 21.