NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

JAIME DIANE MCAVOY, *Petitioner/Appellee*,

*v.*

GEOFFREY FORDE LOGAN, *Respondent/Appellant*.

No. 1 CA-CV 25-0186 FC

FILED 11-25-2025

Appeal from the Superior Court in Maricopa County
No. FC2015-070821
The Honorable Jillian Francis, Judge

**AFFIRMED**

COUNSEL

Cantor Law Group PLLC, Phoenix
By Lisa L. Monnette
*Counsel for Respondent/Appellant*

Jaime Diane McAvoy, Surprise
*Petitioner/Appellee*

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

**K I L E Y**, Judge:

**¶1**         Geoffrey Logan ("Father") challenges the superior court's parenting time order. Because he has shown no abuse of discretion, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**         Father and Jaime McAvoy ("Mother") were married in 2008 and have one child, C.L., who was born in 2010. Their marriage was dissolved in 2015 by a dissolution decree which, *inter alia*, awarded the parties joint legal decision-making authority ("LDM") and equal parenting time.

**¶3**         Viewed in the light most favorable to upholding the superior court's ruling, *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 17 (App. 2015) (citation omitted), the evidence shows that the parties stopped following their "equal time" parenting schedule in 2017 when, Mother later explained, Father's exercise of parenting time "dwindled." By "about 2020," Mother went on, Father's exercise of parenting time had declined to "basically every other weekend."

**¶4**         C.L. was diagnosed with autism in 2023 and has an Individualized Education Program ("IEP") to address his special educational needs.

**¶5**         In early 2024, Mother filed a petition to modify the dissolution decree, requesting, among other things, that she be awarded sole LDM and designated C.L.'s primary residential parent, with Father having parenting time on weekends and certain holidays. An evidentiary hearing was set in November 2024.

**¶6**         The parties attended a pre-hearing parenting conference at which they agreed to continue to share joint LDM. The written agreement that they signed at the conference expressly provided that they "will make major educational decisions together." Meanwhile, C.L. was interviewed

by a representative of the court's Conciliation Services program. C.L. indicated that he wanted to spend equal time with each parent, stating, "I just want to make it . . . even."

¶7        At the evidentiary hearing, Mother and Father both asked to be designated C.L.'s primary residential parent. In her testimony, Mother indicated that the parenting time schedule she proposed was consistent with the schedule that the parties had been following for the past several years. Father did not dispute Mother's testimony on that point, but explained that his exercise of parenting time was "inhibited" by the distance between his home and C.L.'s school, which, he stated, is "like a 45 to 50 minute drive in rush hour."

¶8        In support of her request to be C.L.'s primary residential parent, Mother stated that she and C.L. "have a very, very close relationship" and that they "do a lot of things together." She also stated that C.L. is close to her older son (who is not common to the parties) and to his maternal grandparents, who live in Arizona during the winter. She did not dispute, however, that C.L. and Father have a positive relationship, too. On the contrary, she testified that C.L. "loves being with his father, for sure."

¶9        Father acknowledged that Mother "is an amazing mother" who has "done a great job." He testified, however, that C.L. should now reside primarily with him, with Mother having parenting time on alternate weekends and during school breaks. He stated that he and C.L. have a close relationship and that they "talk all the time." Moreover, he added, C.L. "tells me things that . . . he might not be comfortable telling [Mother]." Father also stated that C.L. has a good relationship with Father's longtime girlfriend.

¶10        When the court asked about C.L.'s expressed wish for equal parenting time, Mother attributed the child's statement to his unwillingness to "hurt" either of his parents. C.L. "is a pleaser," she stated, and "wouldn't want to hurt either one of us." Father, for his part, testified that he asked C.L. about his preference, and C.L. told him "[h]e wanted to move" in with Father. "[H]e's not going to tell Mom that," Father said, because "he loves his mother."

¶11        When asked about C.L.'s adjustment to school, Mother acknowledged that C.L. has always struggled academically. Because he's on "the spectrum," she stated, he has difficulty "comprehending things." She testified that she was dissatisfied with the elementary school he attended, so she attempted to enroll him in schools in other districts, but

those schools "wouldn't accept" him because they didn't "have enough space." After searching for "a different school," she finally enrolled him in a "charter school" that offered "smaller classes." C.L., who is now in eighth grade, has attended his current school since the fifth grade, and while Mother admitted that the school is "not the best," she stated that it is "the one school so far that has . . . met all his needs." She acknowledged that C.L.'s "not getting the best of grades" and that she "spend[s] hours each night" helping him with his homework. She also noted, however, that C.L. has begun seeking help from his teachers "after hours" and his grades have improved.

¶12        Father denied that C.L.'s autism is a significant obstacle to academic success. C.L. is only "slight[ly] on the spectrum," he stated, later reiterating, "I just don't think his autism is that prevalent." Describing C.L. as "highly intelligent," Father attributed C.L.'s struggles in school to difficulties in "getting him focused" and "keeping distractions away."

¶13        Noting that he attended a private high school that prepared him well for college, Father expressed the view that C.L. would benefit from attending a similar school. He identified Brophy Preparatory Academy ("Brophy") as his preferred choice, explaining that it is "an all-boys school" with an impressive "pedigree" and "level of education." When asked if he believed C.L. met that school's admission standards, Father did not directly answer. Instead, he stated, "Brophy is not the 'end all, be all,'" and then identified by name several other high schools which he considers comparable to Brophy.

¶14        Mother testified that she doubted that the parties could afford private school tuition and, in any event, doubted that C.L. could gain admission to private school due to "the grades that he has." When asked if she would agree to enroll C.L. in private school if Father agreed to pay for it, Mother testified that she would need more information about the proposed school before deciding.

¶15        Father expressed the view that, as a boy "going through adolescence," C.L.'s best interests would be served "being with his father" at "this point in his life." "[A] teenage son," Father opined, benefits from "being with [his] father," "learning from him," and developing "discipline," "commitment," and "drive." C.L. is "a great kid" with "a ton of potential," Father concluded, and "living with me will allow him to put his best foot forward and have that opportunity at success."

**¶16** After taking the matter under advisement, the court issued a lengthy ruling in which it adopted the parties' pre-hearing agreement to continue to share joint LDM, designated Mother C.L.'s primary residential parent, and awarded Father parenting time three weekends of each month during the school year and on certain holidays. The court further ordered that, during the summer, the parties would exercise equal parenting time on a "week on/week off" basis. The court also modified child support to account for the modified schedule.

**¶17** Father timely appealed. We have jurisdiction under A.R.S. § 12-120.21(A)(1).

## DISCUSSION

**¶18** Father asserts that the court erred in "designat[ing] Mother as the primary residential parent" and "limit[ing] Father's parenting time" to three weekends each month during the school year. Mother's answering brief asks us "to uphold the [superior court's] decision" which, she states, "still allows [Father] ample opportunity to take a more active role in [C.L.'s] development."[1]

**¶19** We review orders of parenting time for an abuse of discretion. *Baker v. Meyer*, 237 Ariz. 112, 116, ¶ 10 (App. 2015) (citation omitted). An abuse of discretion occurs "when the record is devoid of competent evidence to support the decision." *Smith v. Smith*, 253 Ariz. 43, 45, ¶ 9 (App. 2022) (citation modified). We will not re-weigh evidence. *Clark v. Kreamer*, 243 Ariz. 272, 276, ¶ 14 (App. 2017) (citation omitted).

**¶20** In determining parenting time, the court must consider eleven specific factors set forth in A.R.S. § 25-403(A). The court's lengthy

[1] Mother's answering brief does not directly respond to any of Father's specific arguments, nor does it cite to the record or to legal authority. Failure to respond to debatable issues or cite to legal or factual support in an answering brief can be deemed a confession of error or may result in the waiver of the appellee's arguments. *See Hecla Mining Co. v. Indus. Comm'n*, 119 Ariz. 313, 314 (App. 1978) (finding confession of error in answering brief that failed to respond to debatable issue); *Varco, Inc. v. UNS Elec., Inc.* 242 Ariz. 166, 170, ¶ 12 n.5 (App. 2017) (declining to apply waiver for answering brief even though it did not cite to the record as required by ARCAP 13(b)). Because the best interests of a child are at issue here, however, we will overlook the deficiencies in Mother's answering brief in resolving this appeal. *See Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (App. 1966).

ruling establishes that it considered each of these factors. Father disputes the court's findings on only two: "[t]he child's adjustment to . . . school" and "the wishes of the child." A.R.S. § 25-403(A)(3), (4).

¶21 Father argues, first, that C.L.'s academic "struggles" indicate that he "has not adjusted to [his] current school." Indeed, Father notes, Mother herself admitted that C.L.'s current school is "not the best." Father asserts that if C.L. resided primarily with him, he would enroll him in "a different school with a higher level of education," and that his work-from-home schedule would allow him "to help the child with [schoolwork] every day."

¶22 In his opening brief, Father does not identify any particular school in which he believes C.L. should be enrolled. Although Father testified at the evidentiary hearing that he would like C.L. to attend Brophy or another private school with a comparable "level of education," he presented no evidence at the hearing of the curriculum offered at any school, nor did he present any reason to believe that a school other than the one C.L. currently attends would better meet his educational needs. Further, he offered no response to Mother's testimony expressing doubt about C.L.'s chances of being admitted to a private school, or to her concerns about the parties' ability to afford private school tuition. Although Father testified that he would be willing to help the child with schoolwork on a daily basis, the court found that Mother already helps C.L. with his homework every day. The court further found that C.L. has recently "been getting after-hours help" at school and that "his grades have improved," findings which the evidence supports. And Father's contention that "a change" to a different school "may give the child a better chance at success" is based on nothing more than speculation that is entitled to no weight when determining parenting time. *See Dodd v. Boies*, 88 Ariz. 401, 404 (1960) ("[P]urely speculative inferences or conclusions do not constitute substantial evidence[.]" (citation omitted)). The evidence supports the court's implicit determination that the child's adjustment to school does not require a change in his primary residence.

¶23 Father argues that the court "abused its discretion [by] not considering the school choice factors" set forth in *Jordan v. Rea*, 221 Ariz. 581 (App. 2009). In *Jordan*, we set forth the factors a court must consider in determining a child's school placement when the parents who share joint LDM "are unable to agree." *Id.* at 584, 590, ¶¶ 1, 23-24. *Jordan* is irrelevant here, however, because neither party raised the issue of school placement in the superior court. On the contrary, they agreed at a pre-hearing conference to continue to share joint LDM and that they "will make major

educational decisions together" rather than asking the court to make those decisions for them.

¶24 In any event, a court cannot resolve a school placement dispute unless each party first identifies his or her preferred school and presents evidence to show that attending the party's preferred school would be in the child's best interests. *See John E. Shaffer Enters. v. City of Yuma*, 183 Ariz. 428, 431 (App. 1995) ("Generally, the party who asserts the affirmative of an issue has the burden of proving it."); *Jordan*, 221 Ariz. at 590, ¶ 22 (holding that a court must apply "[t]he best-interests standard" when fit parents "are unable to agree" on "the upbringing of the child"). A party should present evidence, in other words, of the advantages that attending the parent's preferred school would offer to the child. *See Jordan*, 221 Ariz at 590, ¶ 24 (noting that when resolving school choice dispute, court should consider, when applicable, such factors as "the qualifications of the teachers at each school" and "the curriculum used and method of teaching at each school"). Here, Father presented no evidence of any benefit offered by his preferred school except vague references to its "pedigree" and "level of education." Since the parties neither asked the court to resolve a school placement dispute nor presented the evidence necessary to do so, the court did not err in not applying the *Jordan* factors. *See Baker*, 237 Ariz. at 115-116, ¶¶ 8-9 (concluding that trial court erred as a matter of law when it applied the *Jordan* school choice factors when the issue was not one of school choice, but of parenting time).

¶25 Father further contends that the court did not consider that C.L. said that he wants "to spend more time with Father." In a best-interest analysis, the court must take the "wishes of the child" into consideration "[i]f the child is of suitable age and maturity[.]" A.R.S. § 25-403(A)(4). The court noted that C.L. expressed that he "wants equal parenting time[]" during his pre-hearing interview. The court was not, however, required to give this fact dispositive weight. *Baker*, 237 Ariz. at 115, ¶ 8 n.7 ("Although the child's wishes may be considered by the court, it is but one factor among others and not decisive."). Moreover, the court discounted C.L.'s statement by finding that C.L. "wants to please both parents," a finding that is supported by Mother's testimony at the hearing. Father's contention that the court ignored the child's wishes is not borne out by the record. To the extent Father complains that the court gave the child's wishes insufficient weight, he is entitled to no relief. An appellate court does not re-weigh the evidence. *Clark*, 243 Ariz. at 276, ¶ 14.

¶26 Father argues that the court's parenting time orders violated the statutory mandate to provide the child with "substantial, frequent,

meaningful and continuing parenting time with both parents." A.R.S. § 25-103(B)(1); *see also* A.R.S. § 25-403.02(B) (providing that, "[c]onsistent with the child's best interests[,]" the court "shall adopt a parenting plan that . . . maximizes" each parent's "parenting time") "At a minimum," Father argues, the court should have "maintain[ed]" the orders in the decree providing "for equal parenting [time.]"

¶27      The court awarded the parties equal parenting time during the summer, but not during the school year. Although, "[a]s a general rule[,] equal or near-equal parenting time is presumed to be in a child's best interests[,]" *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 6 (App. 2019), Arizona law does not mandate it. *Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶ 11 (App. 2020) (as amended). On the contrary, the superior court has "discretion to determine parenting time based on all the evidence before it." *Id.*

¶28      The record shows that although the decree entered in 2015 awarded the parties equal parenting time, they stopped exercising equal parenting time within two years because the distance between their homes made an "equal time" schedule impracticable. At the November 2024 hearing, neither party asked the court to order an "equal time" schedule. Instead, each party asked to be designated C.L.'s primary residential parent. Since the parties agreed that the "equal time" parenting time schedule set forth in the decree had not been followed and should be modified, Father cannot obtain relief on appeal by arguing, for the first time, that the court abused its discretion by failing to order an "equal time" schedule that no party requested. *See Woodworth v. Woodworth*, 202 Ariz. 179, 184, ¶ 29 (App. 2002) (holding that argument not raised at trial was waived on appeal).

¶29      In support of his position, Father asserts that the superior court abused its discretion by giving insufficient weight to his testimony that it "would be beneficial for a teenage son going through adolescence to live with his father so he could learn and grow from him." This argument asks us to re-weigh the evidence, which we will not do. *Clark*, 243 Ariz. at 276, ¶ 14. And in any event, the record refutes Father's suggestion that the court disregarded his testimony about his "duty" to "teach his son." On the contrary, the court expressly stated that it found Father's testimony on this point to be "compelling." The court also found, however, that Mother, too, loves C.L. and that the two "have a very close relationship." The court thus concluded, and the evidence shows, that C.L. has a loving relationship with both parties. The superior court has "broad authority to establish parenting-time orders[,]" *Smith*, 253 Ariz. at 49, ¶ 26, and did not abuse its discretion

by entering a parenting time order that essentially formalized, during the school year, the schedule the parties had already been following, while giving the parties equal time during the summer.

## CONCLUSION

¶30      We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:       JR