IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

_____

ANTHONY CELAYA,
*Petitioner/Appellee,*


*v.*


TAMARA CAMILA RIVERO QUINTEROS,
*Respondent/Appellant.*


No. 2 CA-CV 2025-0040-FC
Filed November 20, 2025

_____


Appeal from the Superior Court in Maricopa County
No. FC2014094181
The Honorable Lisa S. Wahlin, Judge

**AFFIRMED**

_____


COUNSEL

Anthony Celaya, Chandler
*In Propria Persona*

Adam C. Rieth P.L.L.C, Mesa
By Adam Rieth
*Counsel for Respondent/Appellant*

**OPINION**

Judge O'Neil authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge Sklar concurred.

O' N E I L, Judge:

¶1        Trial courts have discretion to modify legal decision-making and parenting time in the best interests of a child. They abuse that discretion in reaching a decision unsupported by substantial evidence, failing to consider relevant evidence, or erring under the law. But our review for such abuse cannot be a mere reweighing of the evidence, nor does disagreement with a court's decision alone suggest error. In this appeal, Tamara Rivero Quinteros asserts the trial court abused its discretion when it denied her request to modify legal decision-making and instead granted Anthony Celaya's request for more parenting time. She claims the court reached its decision without substantial supporting evidence, ignored relevant evidence, and committed legal error. We affirm because the court's decision was a proper exercise of its discretion in considering the facts in evidence and entering orders to serve the child's best interests.

**Background**

¶2        Anthony and Tamara have shared joint legal decision-making for their child since the trial court first entered its decree in 2014. The child spent the first several years of his life living primarily with Tamara. In the decree, the court noted that because of his work schedule, Anthony did "not want parenting time during his work hours" and had asked only for parenting time "from 2:30 pm to 9:00 pm during the work week, with alternate weekends." The decree gave Anthony parenting time each Monday, Wednesday, and Friday evening and on alternating weekends.

¶3        The trial court twice dismissed Tamara's petitions to reduce Anthony's parenting time, in 2014 and 2015. But in 2021, based on Anthony's petition to modify parenting time, the court found that circumstances of Anthony's employment had significantly changed, warranting increased parenting time. Although the court kept the child's schedule the same during the school year, it ordered equal parenting time during summer break.

¶4 Tamara filed another petition to modify legal decision-making, parenting time, and child support in 2023, seeking final say in parenting decisions and reduced parenting time for Anthony. In his response, Anthony asked the court to modify legal decision-making and parenting time by instead giving him final say and equal parenting time. After an evidentiary hearing, in 2024, the court ordered that the parties would continue to share joint legal decision-making but modified parenting time so that Anthony and Tamara shared equal time throughout the year. The court later denied Tamara's motion for additional findings and to alter or amend its ruling. Tamara appeals from the court's decision.

**Discussion**

¶5 Tamara asserts the trial court abused its discretion because it did not grant her final say in legal decision-making and granted equal parenting time instead of limiting Anthony's parenting time to weekends during the school year. She claims the court lacked substantial evidence to support its decision, ignored evidence, and committed legal error.

¶6 A petition to modify legal decision-making and parenting time involves a two-stage inquiry. *Backstrand v. Backstrand*, 250 Ariz. 339, ¶ 14 (App. 2020). The court's sole task in the first stage is to decide whether there has been a change in circumstances that materially affects the child's welfare. *Id.* ¶ 16. If so, the court will go on in the second stage to "determine legal decision-making and parenting time . . . in accordance with the best interests of the child." A.R.S. § 25-403(A); *see Backstrand*, 250 Ariz. 339, ¶¶ 14, 25. Trial courts have significant discretion throughout this process. They have discretion to weigh evidence and witness credibility in determining the facts. *Yanez v. Sanchez*, 257 Ariz. 302, ¶ 30 (App. 2024). They also have discretion to decide whether the facts represent a material change in circumstances warranting modification. *Backstrand*, 250 Ariz. 339, ¶ 14. If so, they have discretion in evaluating the best interests of the child. *See Black v. Black*, 114 Ariz. 282, 284 (1977) (trial judge in "best position to determine the issues" and has "wide discretion in deciding what will be in the best interests of the child"). And, after considering those interests, courts have discretion to craft appropriate legal decision-making and parenting time provisions. *Gish v. Greyson*, 253 Ariz. 437, ¶¶ 31-34 (App. 2022).

¶7 Although trial courts must make decisions about legal decision-making and parenting time in the child's best interests, this necessity does not mean that courts supplant the rights of fit parents in favor of their own preferences and beliefs concerning what good parenting

3

ought to entail. *See Jordan v. Rea*, 221 Ariz. 581, ¶¶ 19-20, 22 (App. 2009) ("Of course, the 'best interests of the child' standard does not and cannot abrogate a fit parent's constitutional right to direct the upbringing of his or her child."). Parents possess the fundamental right to direct their child's "upbringing, education, health care and mental health." A.R.S. § 1-601(A). Arizona law presumes it is in a child's best interest to have both parents involved in parenting decisions and "[t]o have substantial, frequent, meaningful and continuing parenting time with both parents." A.R.S. § 25-103(B). Mere disagreement with parental decisions does not suggest grounds to reduce or strip away the parent's presence and responsibility in the child's life. *See* § 1-601(B); *cf. Troxel v. Granville*, 530 U.S. 57, 67-68 (2000) (parents presumed to act in child's best interest). Even when the context of some intractable parental dispute requires a court to decide an issue in a child's best interests, the court cannot replace the role of a parent. *See Jordan*, 221 Ariz. 581, ¶¶ 19-20, 22; *Nicaise v. Sundaram*, 244 Ariz. 272, ¶¶ 1, 27-28 (App. 2018) (court "may not substitute its judgment for that of the parents and make parenting decisions for them"), *vacated in part on other grounds*, 245 Ariz. 566 (2019); *cf. Troxel*, 530 U.S. at 70 (in context of grandparent visitation decision by single parent, "the court must accord at least some special weight to the parent's own determination" of what best interests require).

¶8        In keeping with these principles, provided both parents are fit and absent dangers such as child abuse and domestic violence, the factors trial courts must consider in determining a child's best interests under § 25-403(A) are largely relational. Courts must evaluate factors "relevant to the child's physical and emotional well-being" such as the child's relationship with the parents and other friends and family, the child's adjustment to life in and around each home, the child's own desires, the mental and physical health of all involved, and each parent's ability to maintain a healthy working relationship with the other. § 25-403(A). Similarly, in determining legal decision-making, § 25-403.01(B) directs courts to consider the parents' agreement, reasonableness in agreeing or disagreeing, and ability to cooperate, as well as the logistical feasibility of joint decision-making. While these statutory factors are not exhaustive, they generally attend to a child's desires, attachments, and adjustment to each home environment, along with each parent's willingness to cooperate without undermining the other parent's role in the child's upbringing. *Id.* With these and other relevant factors in mind, § 25-403.02(B) requires courts to "adopt a parenting plan that provides for both parents to share legal decision-making regarding their child and that maximizes their respective parenting time."

¶9        The whole of this endeavor is an exercise of a trial court's discretion that we will not disturb absent abuse. *Backstrand*, 250 Ariz. 339, ¶ 14.  A court may abuse its discretion by reaching a decision unsupported by evidence, by failing to consider relevant evidence, or by erring according to law—each of which Tamara alleges here. *Walsh v. Walsh*, 230 Ariz. 486, ¶ 9 (App. 2012).  But as Tamara presents her arguments in this appeal, each is essentially an invitation to reweigh the evidence and to substitute our own judgment in place of the court's discretion.  We decline the invitation.

## I.   Insufficient Evidence

¶10        Tamara challenges the trial court's orders concerning both legal decision-making and parenting time on the basis that the court's decision was not supported by substantial evidence.  We will reverse a decision to modify legal decision-making and parenting time on this basis only "when the record is devoid of competent evidence to support the decision."  *Yanez*, 257 Ariz. 302, ¶ 26 (quoting *Engstrom v. McCarthy*, 243 Ariz. 469, ¶ 4 (App. 2018)).  It is not enough to show that conflicting evidence cut against the court's conclusion or that the supporting evidence was unpersuasive.  *Hurd v. Hurd*, 223 Ariz. 48, ¶ 16 (App. 2009).  Our role is not to reweigh evidence.  *Id.*  "[O]ur only concern is whether facts have been established which might reasonably support the trial court's judgment."  *Whittemore v. Amator*, 148 Ariz. 173, 175 (1986).  In considering this issue, we view the facts in the light most favorable to sustaining the court's decision.  *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, ¶ 14 (App. 2003).

¶11        Tamara's opening brief recounts at length the conflicting evidence that, if viewed in the light most favorable to her, might have supported a decision in her favor.  Her argument ill fits our standard of review, which instead requires demonstrating that the record lacks evidence to support the trial court's decision.[1]  The existence of contrary

---

[1]Tamara misstates this standard in her opening brief.  Contrary to her articulation of the standard, when considering whether substantial evidence supports the trial court's decision, the existence of conflicting evidence is not merely the beginning of our analysis.  More often, it is the end.  When conflicting evidence exists concerning a disputed fact, we trust the court to weigh that evidence in deciding the issue.  *Hurd*, 223 Ariz. 48, ¶ 16; *see also Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, ¶ 27 (App. 2007) ("To the extent the parties presented facts from which conflicting

evidence, however persuasive, does not in itself suggest the court abused its discretion so long as the record contains evidence that reasonably supports the court's decision. *Hurd*, 223 Ariz. 48, ¶ 16. And it does.

## A. Joint Legal Decision-Making

¶12 In determining that Anthony and Tamara would continue to share joint legal decision-making without either party having final say, as they had done for the preceding ten years, the trial court found the parents had "been able to cooperate in decision-making to the extent required" and joint legal decision-making remained "logistically possible." Tamara argues this decision was unsupported by evidence because for two years, Anthony did not agree to medicate their child for anxiety. She thus asserts the court abused its discretion because it did not find that Anthony's "delay in approving anxiety medication . . . was not in the child's best interest" and in failing to give Tamara final say in legal decision-making as a consequence.

¶13 The ultimate question before the trial court, however, was not whether the child would have benefited from anxiety medication or even whether either Tamara or Anthony had acted wisely in evaluating the child's needs. The parents had already resolved that dispute on their own. The court was deciding whether joint legal decision-making was in the child's best interests. *See* § 25-403(A) ("court shall determine legal decision-making . . . in accordance with the best interests of the child"). In considering a legal decision-making arrangement between two fit parents, the court could not simply override either parent's fundamental right to direct the child's healthcare and upbringing. *See* § 1-601(A); *Jordan*, 221 Ariz. 581, ¶¶ 19-20, 22 ("Unless fit parents disagree, the courts have no jurisdiction to become involved with a fit parent's choices for the upbringing of the child and override that paramount parental privilege."). That right generally allows parents to disagree in good faith about a child's best interests without fear that a court might limit involvement in the child's life merely because it sides with the other parent in a dispute. *See Troxel*, 530 U.S. at 67-69; § 1-601(B).

¶14 In this case, even if the trial court had agreed with Tamara that the better choice would have been to approve medication much earlier, it was not required to conclude that a modification of legal decision-making

inferences could be drawn . . . , it was for the trial court, not this court, to weigh those facts.").

was in the child's best interests. This is because the court was evaluating a legal decision-making arrangement, not the merits of a healthcare or any other parenting decision. Whatever the wisdom of each parent's position concerning their child's need for medication, consistent with the factors in §§ 25-403(A) and 403.01(B), the court had ample reason to conclude that the child had a healthy relationship with both parents and that the parents were capable of working together for the good of the child despite their differences.

¶15 Anthony viewed the prospect of medicating the child differently than Tamara did. He testified that he had resisted medicating the child because he was "very hesitant with medication" and believed the child merely had an "attention issue." That disagreement long persisted. But although their communication was poor, as the trial court noted, they worked through their differences in time, and eventually they agreed to medicate their child.

¶16 Anthony testified that although he and Tamara have "moments where [they]'re just not on the same page," they could both "do [their] part to come to an agreement." In fact, they had done so, including in situations where Anthony had "hesitations" but either compromised or deferred to Tamara's wishes. According to Anthony's testimony, he and Tamara are "two parents trying to do what is best for their child" but who do "not always . . . agree on things." Although the trial court acknowledged Tamara's assertion that Anthony had not been "fully invested" in the decision-making process, the court apparently disagreed, concluding that their "different parenting styles" did not prevent them from cooperating as necessary. The record reasonably supports the court's decision to order joint legal decision-making.

## B. Equal Parenting Time

¶17 The trial court found the child "has a good relationship with both parents," is "close with" his extended family on both sides, and "is adjusted to both homes." As a result, the court concluded that a schedule allowing equal time with both parents throughout the year was in the child's best interests. Tamara argues the court's decision is unsupported by the record because she presented evidence that she was the better parent. She also argues the court "misapplied best interest factors" in finding that Anthony was more likely than Tamara "to allow the child frequent, meaningful and continuing contact" with the other parent and because it found that Anthony attends school-related meetings "when his work schedule allows." Tamara recites her own testimony concerning Anthony's

various purported shortcomings, argues that Anthony's explanations and contrary evidence were unpersuasive, and concludes that "[i]t cannot be any clearer as to which parent is interested in the child's best interest."

¶18        Proceedings to determine parenting time between fit parents are not a contest to decide who is the better parent. *See Goodman v. Forsen*, 239 Ariz. 110, ¶ 14 (App. 2016) ("The court's role is not to engineer what it perceives to be the optimal situation for the child."), *abrogated in part on other grounds, In re Marriage of Friedman & Roels*, 244 Ariz. 111, ¶ 19 (2018). A trial court will not limit parenting time merely to punish a parent for decisions the court does not approve. *See Jordan*, 221 Ariz. 581, ¶ 22; *Jackson v. Tangreen*, 199 Ariz. 306, ¶ 13 (App. 2000) (trial court may not "substitute its own judgment for that of a fit parent"). The court might dislike certain decisions of either or both parents, on any number of occasions, yet decide nonetheless that the child's interests will be best served by equal parenting time. *See* A.R.S. § 25-103(B) (presumption that child's best interests served by having both parents involved in decision-making with substantial parenting time).

¶19        Nor was the trial court obliged to join Tamara in inferring from the facts that Anthony was not "interested in the child's best interest." The court determines such facts. *See Yanez*, 257 Ariz. 302, ¶ 30. After doing so, the court has discretion to decide on parenting time orders in the child's interest. *Gish*, 253 Ariz. 437, ¶ 34. Although Tamara testified that Anthony was not "fully invested" in parenting the child, the court also heard Anthony's testimony that both parents cared for the child even though they disagreed. Tamara's argument asks us to second-guess the court's credibility determinations, reweigh the evidence, and substitute our judgment concerning the best interests of the child for the court's own. That is not our role. *Backstrand*, 250 Ariz. 339, ¶ 27 ("We will not substitute our judgment by reweighing the evidence underlying the court's best-interests analysis.").

¶20        In explaining its finding that Anthony was the parent more likely to facilitate contact with the other parent, the trial court noted that Tamara had "repeatedly made allegations or initiated proceedings against [Anthony] in an attempt to reduce [Anthony]'s parenting time." The court's statement might have referred, in part, to the positions Tamara took in the initial paternity proceedings and her prior petitions to reduce Anthony's parenting time in 2014 and 2015. The court was entitled to consider that context and the parties' history in reaching a decision in this proceeding. *Pridgeon v. Superior Court*, 134 Ariz. 177, 179-80 (1982). "[T]he

present cannot be understood without considering the events of the past." *Id.* at 179.

¶21 As far back as the 2014 decree, the trial court found that Tamara was "unreasonably hostile to the child having a relationship with the child's father" and had "deliberately made false allegations against [Anthony] in order to undermine the child's relationship with [Anthony] on an improper basis." The court concluded that Anthony was "far more supportive of the child's relationship with [Tamara] than [Tamara] is supportive of the child's relationship with [Anthony]."

¶22 Although Tamara misleadingly states her 2014 and 2015 petitions "were dismissed without adjudication on the merits," the trial court dismissed the 2014 petition "for failure to state a significant and continuing change in the material circumstances." Tamara made further allegations against Anthony in response to Anthony's successful petition to modify parenting time in 2021, asking the court to designate Tamara "primary residential parent with [Anthony] having parenting time based upon the child's comfort level and best interest."

¶23 Within that historical context, the trial court might reasonably have concluded that Tamara's various allegations against Anthony and the positions she took at trial reflected more of the same hostility towards the child's relationship with his father that Tamara had displayed in the past— including, for example, her allegations that Anthony was not feeding, showering, or providing medication for the child, was not ensuring he finished his homework, and generally did not act in the child's best interest. The court heard Tamara's testimony on each of those allegations, yet it apparently disagreed with her conclusions, explaining that the evidence failed to show "that the child is not being adequately cared for in either home."

¶24 Anthony, by contrast, testified "that it is essential for both [parents] to be involved," expressed optimism in their ability to resolve issues, stated that the child "enjoys spending time with me" and "equally" enjoyed spending time with his mother, and argued that an "equal amount of time in both homes" would be "essential for him." The record is replete with evidence that Anthony was much more supportive of Tamara's relationship with the child than she was of his.

¶25 Evidence concerning Anthony's attendance at meetings was thoroughly contested at trial, and we will not second-guess the trial court's resolution of that issue. *In re Estate of Newman*, 219 Ariz. 260, ¶ 40 (App.

2008). Anthony testified that he had "tried [his] best" to attend meetings but would "rely on" Tamara to attend meetings during business hours. Although Tamara points to a single meeting that Anthony missed while unemployed, such that his work schedule should not have been an "excuse," a lone exception does not meaningfully undermine the court's finding, much less its ultimate conclusion that the child was "adjusted to both homes."

¶26 To prevail on appeal, it is not enough to relitigate the facts and argue the trial court should have reached a different conclusion. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, ¶ 13 (App. 1998). Tamara's burden is to demonstrate that the record is bereft of evidence to support the court's decision, not merely that her own evidence was stronger or that Anthony's evidence should have been disregarded. *Yanez*, 257 Ariz. 302, ¶ 26. However firmly Tamara might believe her own testimony was more reliable, Anthony's testimony supports the court's findings, and those findings, in turn, support the court's order for equal parenting time. In addition to the evidence of Anthony's care for and relationship with the child, Anthony testified that he believed the child's needs would be better served by a consistent year-round schedule spending equal time with each parent. It seems the court agreed, and it had the discretion to do so. We find no abuse of that discretion.

## II. Failure to Consider Evidence

¶27 Tamara asserts that, in concluding the disagreements between the two parents represented "a difference in parenting styles" that did not warrant limiting Anthony's parenting time, the trial court failed to consider evidence relevant to the child's best interests. She argues that the court's decision to award equal parenting time suggests the court "ignored the evidence . . . that negatively reflected on [Anthony]." Tamara lists some such evidence, ranging from Anthony's purported failure to enforce nightly showers before bedtime to his alleged inconsistency in ensuring the child took medication.

¶28 A trial court abuses its discretion by reaching a conclusion without considering relevant evidence. *Walsh*, 230 Ariz. 486, ¶ 9. We assume, however, that a court has fully considered all of the relevant evidence admitted into the record before making a decision. *Fuentes v. Fuentes*, 209 Ariz. 51, ¶ 18 (App. 2004). The fact that a court does not agree with a party's position in no way suggests a failure to consider evidence. *Scott v. L.E. Dixon Co.*, 42 Ariz. 525, 531 (1934). It means only that the court, after considering the evidence, reached a different conclusion. *Id.* When

we have found an abuse of discretion for failure to consider evidence, it is because the record demonstrates the court wrongly removed relevant evidence from the decision-making process, not merely because the court reached a decision unfavorable to the party who proffered that evidence. *See, e.g., State v. McMurtrey*, 136 Ariz. 93, 102 (1983) (error in refusing to consider mitigating circumstance not listed in sentencing statute).

**¶29** Tamara's disagreement with the trial court's decision does not demonstrate that the court failed to consider evidence. It shows only that the court viewed the evidence and its implications differently. The court might, for example, have disagreed with Tamara concerning the strength of her evidence or the extent to which it reflected on Anthony's willingness or ability to care for the child. It might also have concluded that equal parenting time would be in the child's best interest despite any relative weaknesses in Anthony's parenting skills. Either would be within the court's discretion. We find no abuse.

## III. Legal Error

**¶30** Tamara asserts the trial court committed legal error by modifying parenting time without a change in circumstances, failing to explain why equal parenting time was in the child's best interest, and denying her motion for additional findings. We defer to a court's factual findings, but we review questions of law de novo. *Borja v. Borja*, 254 Ariz. 309, ¶ 10 (App. 2022).

### A. Changed Circumstances

**¶31** According to Tamara, "there was no change of circumstances to warrant *any* modification of parenting time," and the trial court's decision to modify parenting time was therefore an abuse of discretion. As we have noted, the first stage of a court's inquiry when considering a modification is to determine whether there has been a change of circumstances materially affecting the welfare of the child. *Backstrand*, 250 Ariz. 339, ¶ 16. The court decides whether a modification is in the child's best interests only when it finds that such a change has occurred. *Id.* ¶ 14. A court is not required, however, to make an express finding of changed circumstances. *See* A.R.S. § 25-411(J). Unless the law demands express findings, we will infer any findings necessary to sustain the court's decision so long as they are reasonably supported by evidence and do not contradict express findings. *Silva v. De Mund*, 81 Ariz. 47, 50 (1956) ("[T]his court must assume the trial court found every controverted issue of fact necessary to sustain the judgment and, if there is reasonable evidence to support such

11

findings, hold that it did so correctly."); *Johnson v. Elson*, 192 Ariz. 486, ¶ 11 (App. 1998).

¶32      Tamara has waived this argument by failing to raise it before the trial court. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."). Far from asserting that there had been no change in circumstances, Tamara asserted numerous changed circumstances in her petition to modify legal decision-making and parenting time. She never abandoned her position throughout trial that those changes warranted modification. Although their reasons differed, both parents agreed before the court that circumstances had changed in a way that materially affected their child's welfare. Nor has Tamara abandoned her position that changed circumstances warranted modification on appeal.

¶33      Her argument—which she did not articulate before the trial court in any event—is different. Tamara argues, in effect, there were changed circumstances for her but not for Anthony. She claims the only evidence of "change[d] circumstances was presented by [Tamara]" and that all such evidence "negatively reflected on [Anthony]." She urges, as a result, the court could modify parenting time only in a manner that benefited her. Despite her suggestion that the court committed an error of law, the substance of her argument again challenges the sufficiency of the evidence.

¶34      Waiver aside, Tamara is wrong about the record. It is undisputed that the child had been diagnosed with ADHD and anxiety since the trial court entered its prior orders, and Anthony testified that the child "needs a constant schedule." And the record, when viewed in Anthony's favor as it must be for the purpose of this appeal, includes evidence that Anthony had a good relationship with the child and would be better positioned to exercise equal parenting time than he had been in the past, that the child had adjusted well to spending more time in Anthony's home since the prior modification, that the previous variable schedule had not been good for the child, and that a more consistent and equal division of time between both homes would benefit the child as he grew older.

¶35      Tamara's argument, moreover, reflects a fundamental misunderstanding of the trial court's two-stage inquiry in modifying parenting time. In the first stage of its inquiry, the court must decide whether changed circumstances exist that materially affect the child's welfare. *Backstrand*, 250 Ariz. 339, ¶ 16. It makes no difference which

parent introduces evidence of those changes, nor does it matter whether those changes speak well of either parent. *See id.* The court's sole concern is whether circumstances have changed in a manner that materially affects the welfare of the child. *Id.*

¶36 Once the trial court has found changed circumstances and has entered the second stage of its inquiry, its job is to determine orders for legal decision-making and parenting time that are in the child's best interests. *Id.* ¶ 25. As we have explained, a proceeding to establish or modify parenting time is not a contest for the court to decide which parent's decisions have been most optimal. *See Goodman*, 239 Ariz. 110, ¶ 14. And neither stage of the court's analysis involves considering which parent benefits from the orders. *See Backstrand*, 250 Ariz. 339, ¶ 14. The court is not limited to a modification that serves the interests of the parent who alleged or successfully proved a change in circumstances. Whenever a court determines legal decision-making or parenting time, whether "originally or on petition for modification," § 25-403(A) requires that it do so "in accordance with the best interests of the child." The court must enter orders that are in the child's best interest, regardless of whether either parent finds those orders preferable to what came before. *Backstrand*, 250 Ariz. 339, ¶ 25.

¶37 The trial court here entered its modification order after both parties asserted changed circumstances that materially affected the child's welfare. Because Tamara did not challenge the existence of changed circumstances below—and, in fact, affirmatively asserted that circumstances had changed—she has waived this issue on appeal. Even absent waiver, the record reasonably supports a finding that circumstances had changed. The court did not abuse its discretion.

### B. Best Interest Findings

¶38 Tamara argues the trial court erred as a matter of law because it "failed to state why a[n equal] schedule was in the child's best interest." She asserts the court's findings were not enough to satisfy § 25-403(B), which requires "specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." Similarly, Tamara argues the court abused its discretion by denying her motion for additional findings because it "failed to state why its prior Order was in the child's best interest as required by statute and case law."

¶39 To support her position, Tamara cites a memorandum decision in which we suspended an appeal and remanded for factual findings because a trial court did not adequately explain the reasons why a

parenting time order was in the child's best interest. *Sidoti v. Sidoti*, 1 CA-CV 18-0650 FC, ¶¶ 6-7 (Ariz. App. July 2, 2019) (mem. decision). The court's findings in *Sidoti* did not suggest that any of the statutory factors in § 25-403(A) favored greater time with either parent, yet the court nonetheless significantly limited one parent's time. *Id.* ¶¶ 3, 6. In explaining that decision, the court stated only that its order was "practical and also maximizes each parent's parenting time to the extent it is in the child's best interests." *Id.* ¶ 6.

¶40　　　　Tamara accurately notes the trial court in this case used language similar to the language in *Sidoti*. But as Tamara acknowledges, being a memorandum decision, *Sidoti* is not precedential and may be cited for persuasive value only if "no opinion adequately addresses the issue before the court." Ariz. R. Sup. Ct. 111(c)(1)(C). Even if there were no opinions addressing this issue, *Sidoti* is not persuasive here. Although the court's statutory findings in *Sidoti* did not explain its parenting time order, this does not suggest that findings regarding statutory factors can never help explain the reasons why a decision is in the best interests of a child, as required by § 25-403(B). To the contrary, such findings exist to "aid[] all parties and the family court in determining the best interests of the child or children both currently and in the future." *Reid v. Reid*, 222 Ariz. 204, ¶ 18 (App. 2009). A court's statutory findings regarding a child's well-being cannot be so cleanly separated from its conclusion that an order for legal decision-making or parenting time serves that child's interests.

¶41　　　　The trial court's statutory findings here, which described the child's healthy relationship with both parents and adjustment to both homes, readily explain why an order for joint legal decision-making and equal parenting time would be in the child's best interests. *See* § 25-403(A). In that context, the court's reasoning that an equal parenting time would be practical and would maximize the child's time with both parents satisfies the statutory requirement. *See* § 25-403(B). Even had those findings been inadequate, in denying Tamara's motion for additional findings, the court offered further analysis sufficient to explain its conclusion that the child was "adequately cared for" in both homes. The court committed no legal error and did not abuse its discretion.

**Disposition**

¶42　　　　We affirm the trial court's decision. Although Tamara seeks her attorney fees under A.R.S. § 25-324, given the unreasonableness of her positions in this appeal, in our discretion, we deny her request. Anthony,

however, is entitled to his costs upon compliance with Rule 21, Ariz. R. Civ. App. P. *See* A.R.S. § 12-341.